IN THE CHANCERY COURT OF LOWNDES COUNTY, MISSISSIPPI

THE STATE OF MISSISSIPPI, *ex rel.*, JIM
HOOD, Attorney General for the State of Mississippi            PLAINTIFF

VS.             CIVIL ACTION NO. 17-22-B

GOOGLE INC.             DEFENDANT

## COMPLAINT

Plaintiff, the State of Mississippi, by Jim Hood, Attorney General for the State of Mississippi ("the State") brings this Complaint against Defendant, Google Inc. ("Google"), and alleges as follows:

### I. INTRODUCTION

1. This action arises out of Google's unfair methods of competition and unfair and deceptive trade practices that pertain to Google's statements about its processing of data and account information pertaining to Mississippi K-12 students who use Google's G Suite for Education (GSFE) accounts (formerly known or referred to as Google Apps for Education) and Google Chrome Sync.

2. Through misrepresentations, material omissions, and false statements, Google assures the Mississippi public and approximately half of Mississippi's K-12 schools that it services its GSFE products in accordance with contractual limitations, policy limitations, and limitations to which it agreed through the K-12 School Service Provider Pledge to Safeguard Student Privacy ("The Pledge"). However, Google does not abide by its statements contained in its multiple terms and policies, and as adopted from the Pledge. Through a child's GSFE account, Google tracks, records, uses, and saves the online activity of Mississippi's children, all for the purpose of processing student data to build a profile, which in turn aids its advertising business. These deceptive practices allow Google to gain an unfair advantage over its competitors and to deceive the Mississippi public in violation of Mississippi law.

1

3.  By failing to disclose its secret acts of data mining to Mississippi's K-12 schools, publishing deceptive marketing and advertising materials, and making false public statements and assurances, Google unfairly and deceptively secured or was able to maintain contracts with Mississippi's K-12 schools; amassed student, faculty, and staff GSFE user accounts; data mined those accounts; and, created an unfair advantage over its competitors who offered similar services without data mining. Google uses the mined data to advance its business interests and increase its revenue. Google's deceptive scheme through material omissions and false assurances amounts to (a) unfair methods of competition affecting commerce and (b) unfair and deceptive trade practices in violation of Mississippi's Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*

4.  The State of Mississippi, by and through Attorney General Jim Hood, as chief legal officer for the State of Mississippi, brings this action in its sovereign capacity.

## II. PARTIES

5.  The State of Mississippi is a sovereign created by the Constitution and laws of the State. As such, Mississippi is not a citizen of any state. Jim Hood is the State's duly-elected Attorney General. The Attorney General brings this action on the State's sole behalf pursuant to his authority granted by Miss. Const. art. 6, § 173; Miss. Code Ann. § 7-5-1; and, specifically Miss. Code Ann. §§ 75-24-1, *et seq.*

6.  Google Inc. is a Delaware corporation, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, Santa Clara County, California. At all times material herein, Google has been doing business, and continues to do business, in the State of Mississippi.

## III. JURISDICTION

7. Subject matter jurisdiction for the instant controversy is conferred upon the Chancery Court of Lowndes County pursuant to Miss. Const. art. 6, § 159 (1890), and Miss. Code Ann. §§ 9-5-81 and 75-24-9. Google is subject to personal jurisdiction in Lowndes County pursuant to Miss. Code Ann. § 13-3-57 as it does business and performs services in this State and in Lowndes County.

8. The instant Complaint does not confer diversity jurisdiction upon the federal courts pursuant to 28 U.S.C. § 1332 because Mississippi is not a citizen for purposes of diversity jurisdiction. Likewise, federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not invoked because the State alleges exclusively state law claims against Google pursuant only to Miss. Code Ann. §§ 75-24-1, *et seq*. Nowhere does the State plead, expressly or implicitly, any cause of action or request any remedy that arises under or is founded upon federal law, nor does it bring this action or seek any relief on behalf of any person, a class, or any group of persons that can be construed as a class. The relief sought by the State pursuant to Miss. Code Ann. §§ 75-24-9 and 75-24-19 is only afforded to the Attorney General and not individual persons, and the State pursues such relief in its singular sovereign capacity. The State seeks no relief pursuant to Miss. Code Ann. § 75-24-15, and it seeks no relief on behalf of any person(s) pursuant to §§ 75-24-11 and 75-24-13. The State specifically disclaims any such claims that would support removal of this action to a United States District Court on the basis of diversity or jurisdictional mandates under the Class Action Fairness Act of 2005 (28 U.S.C. §§ 1332(d), 1453, 1711-1715). The issues presented in the allegations of the instant, well-pleaded Complaint do not implicate significant or substantial federal issues and do not turn on the necessary interpretation of any federal law. The State expressly avers that the only causes of action

3

claimed, and the only remedies sought herein, are founded upon the statutory, common, and decisional laws of the State of Mississippi related to Miss. Code Ann. §§ 75-24-1, *et seq.*, and with the expressed exclusion of Miss. Code Ann. §§ 75-24-15 and for any person(s) pursuant to §§ 75-24-11 and 75-24-13. The assertion of federal diversity jurisdiction over these claims would improperly disturb the constitutionally mandated and congressionally approved balance of federal and state responsibilities because federal jurisdiction does not exist over this case under the Class Action Fairness Act. See *Mississippi ex rel. Hood v. AU Optronics Corp.*, 559 Fed. Appx. 375, 376-377 (5th Cir. Miss. 2014) (citing *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014)). Accordingly, any attempt by Google to remove this case to federal court would be without a reasonable legal basis in fact or law.

## IV. VENUE

9. Venue is proper in the Chancery Court of Lowndes County pursuant to Miss. Code Ann. § 75-24-9 and Miss. R. Civ. P. 82(b), as Google did market, promote, advertise, implement, administer, and maintain contracts for GSFE and Chrome/Chrome Sync in Mississippi and in Lowndes County specifically.

## V. FACTUAL BACKGROUND

A. **Google's K-12 Services**

10. Google's G Suite for Education ("GSFE") (formerly known or referred to as Google Apps for Education) is a web-based service marketed by Google as a free service to educational institutions, including K-12 schools. The educational institution ("Customer school" or "Customer") contracts with Google for the use of the GSFE service, which includes Gmail, Calendar, Talk/Hangouts, Drive, Docs, Sheets, Slides, Sites, Contacts, and the Apps Vault.

4

11. A Customer School allows (or requires) the Customer's students, faculty, and staff to sign up and use GSFE products as GSFE users. In this enrollment process, each GSFE user is given a user name and password identifying that GSFE user with a particular GSFE account.

12. When a K-12 student signs into ("logs" into) their GSFE account, Google knows (a) the person using the account is a student, (b) the user's identity and account information, and (c) that the account was created for educational purposes.

**B.    The Pledge & Google's Adoption of Its Terms**

13. On or about October 7, 2014, The Future of Privacy Forum (FPF) and The Software & Information Industry Association (SIIA) introduced the K-12 School Service Provider Pledge to Safeguard Student Privacy ("The Pledge") to protect student privacy regarding the collection, maintenance, and use of students' personal information. The Pledge was aimed at K-12 school *service providers* to safeguard student privacy. The Pledge applies to all student personal information and to all student GSFE user accounts.

14. Google is a school service provider as defined by The Pledge.

15. Google signed the Pledge in January of 2015. By so doing, Google affirmatively committed to the representations made in the Pledge and affirmatively represents it abides by its terms.

16. As it relates to GSFE accounts, Google expressly commits, in pertinent part, to:

- Not collect, maintain, use or share student personal information beyond that needed for authorized educational/school purposes, or as authorized by the parent/student. …
- Not use or disclose student information collected through an educational/school service (whether personal information or otherwise) for behavioral targeting of advertisements to students.
- Not build a personal profile of a student other than for supporting authorized educational/school purposes or as authorized by the parent/student …

5

- Not knowingly retain student personal information beyond the time period required to support the authorized educational/school purposes, or as authorized by the parent/student.
- Collect, use, share, and retain student personal information only for purposes for which we were authorized by the educational institution/agency, teacher, or the parent/student.
- Disclose clearly in contracts or privacy policies, including in a manner easy for parents to understand, what types of student personal information we collect, if any, and the purposes for which the information we maintain is used or shared with third parties. …

17. Despite Google's expressed assurances, when a Mississippi K-12 student logs into a GSFE account, remains logged in to that GSFE account, and then uses Google services such as YouTube, Google Maps, Google Books, or Google News, Google follows and tracks the student's activity, collects information from the student's activities, stores that information, and uses the data for advertising purposes, all in association with the GSFE account and the student's account information.

18. Further, when a K-12 student logs into a GSFE account on a computer which has Google Chrome Sync enabled, remains logged in, and then uses the Chrome browser to conduct internet activities, Google collects all of the information regarding the student's online activities. All of the collected information (including data for non-educational purposes) from the student—while logged into the GSFE account—is maintained by Google in association with the student's GSFE account. Google further uses the collected information obtained while the student is logged into the GSFE account for purposes which violate its commitments in the Pledge.

19. Accordingly, Google's statements are false, misleading, unfair, and deceptive.

C. **The G Suite for Education Agreement—"Customer Data"**

20. When Google contracts with a school, it requires the school to agree to its G Suite for Education (Online) Agreement (hereinafter "GSFE Agreement") (formerly the Google Apps for Education (Online) Agreement).

6

21. Google expressly intends to be bound by and specifically refers Mississippi educators, parents, and students to review the terms of the GSFE Agreement as it relates to the GSFE services.

22. In the Agreement, Google states:

**1.4 Ads.** Google does not serve Ads in the Services or *use Customer Data for Ads purposes.*

(Emphasis added).

23. "Customer Data" includes "data, including email, provided, generated, transmitted or displayed via the Service by Customer *or End Users.*" (Emphasis added).

24. Google's definition of "End User"—the GSFE users—includes Mississippi K-12 students using GSFE through their respective schools.

25. Google's "Customer Data" definition includes the Mississippi K-12 student GSFE account information; student identity; information pertaining to a student; and data from the student's computer, computing device, and/or mobile/smart phone device which is generated, transmitted, or displayed via the Service by the student.

26. Accordingly, Google expressly commits in the GSFE Agreement that when a Mississippi K-12 student logs in using a GSFE account and remains logged in, Google will not use any information or data associated with that student's account; that student's identity; personal information pertaining to that student; or, data from that student's computer, computing device, or mobile/smart phone device for any advertising purposes.

27. Despite its expressed assurances, when a Mississippi K-12 student logs into a GSFE account, remains logged in to that GSFE account, and then uses Google services such as YouTube, Google Maps, Google Books, or Google News, Google uses the student's data for advertising purposes.

7

28. Further, when a K-12 student logs into a GSFE account on a computer which has Google Chrome Sync enabled, remains logged in, and then uses the Chrome browser to conduct internet activities, Google uses the student's data obtained from the GSFE account for advertising purposes.

29. Accordingly, Google's statements are false, misleading, unfair and deceptive.

**D.     The GSFE Agreement—"Confidential Information"**

30. In Google's GSFE Agreement, Google affirmatively agrees that it "may use Confidential Information *only to exercise rights and fulfill its obligations under this Agreement,* while using reasonable care to protect it." (Emphasis added).

31. Google specifically refers Mississippi educators, parents, and students to review the terms of the GSFE Agreement as it relates to Google's use of student data.

32. The GSFE Agreement expressly states, "Customer Data is considered Customer's Confidential Information."

33. As a matter of contract, Google defines "Confidential Information" to specifically include "Customer Data"—which in turn includes any and all Mississippi K-12 student (GSFE user) data, including email, provided, generated, transmitted or displayed using the GSFE account.

34. Accordingly, while a student is logged in or has been logged in to a GSFE account, any and all data provided, generated, transmitted or displayed via that GSFE account can only be used by Google for purposes necessary *to exercise Google's rights and fulfill Google's obligations under the GSFE Agreement.* Any other use is expressly and contractually prohibited.

8

35. Despite its expressed contractual assurances, when a Mississippi K-12 student logs into a GSFE account, remains logged in to that GSFE account, and then uses Google services such as YouTube, Google Maps, Google Books, or Google News, Google uses the student's data for purposes beyond Google's exercise of rights and obligations under the GSFE Agreement.

36. Further, when a K-12 student logs into a GSFE account on a computer which has Google Chrome Sync enabled, remains logged in, and then uses the Chrome browser to conduct internet activities, Google uses the student's data obtained from the GSFE account for purposes beyond Google's exercise of rights and obligations under the GSFE Agreement.

37. Accordingly, Google's statements are false, misleading, unfair and deceptive.

E.  **Google's Data Processing Amendment to the GSFE Agreement**

38. As part of the GSFE Agreement, Google incorporates by reference its Data Processing Amendment to G Suite Agreement (hereinafter "DPA Agreement").

39. Google expressly intends to be bound by and specifically refers Mississippi educators, parents, and students to review the terms of the DPA Agreement as it relates to Google's conduct toward Mississippi student data.

40. The DPA Agreement specifically states, "5.3. Processing Restrictions. Notwithstanding any other term of the Agreement, *Google will not process Customer Data for Advertising purposes* or serve Advertising in the Services." (Emphasis added).

41. "Customer Data" in the DPA Agreement includes Mississippi K-12 student "data (which may include personal data and the categories of data referred to in Appendix 1) submitted, stored, sent or received via the Services."

42. Accordingly, Google is contractually prohibited for advertising purposes from even *processing* any data at any time which has been obtained from activities of a Mississippi K-12 student while logged into a GSFE account or having been logged into a GSFE account.

43. Despite its expressed contractual assurances, when a Mississippi K-12 student logs into a GSFE account, remains logged in to that GSFE account, and then uses Google services such as YouTube, Google Maps, Google Books, or Google News, Google processes student data for advertising purposes.

44. Further, when a K-12 student logs into a GSFE account on a computer which has Google Chrome Sync enabled, remains logged in, and then uses the Chrome browser to conduct internet activities, Google processes the student's data obtained from the GSFE account for advertising purposes.

45. Accordingly, Google's statements are false, misleading, unfair and deceptive.

**F.    The G Suite for Education Privacy Notice**

46. The G Suite for Education Privacy Notice (GSFE Privacy Notice), reads, in part:

> For G Suite for Education users in primary and secondary (K-12) schools, Google does not use any user personal information (*or any information associated with an G Suite for Education Account*) to target ads, *whether in Core Services or other Google services accessed while using an G Suite for Education account.*

(Emphasis added)

47. Google expressly intends to be bound by and specifically refers Mississippi educators, parents, and students to review the terms of the GSFE Privacy Notice as related to Google's conduct toward Mississippi student data.

48. By its own statements, Google is prohibited from using for advertising purposes any data ("information") obtained from activities of a Mississippi K-12 student, which includes data that is merely "associated with a Google account."

10

49. Despite its expressed assurances, when a Mississippi K-12 student logs into a GSFE account, remains logged in to that GSFE account, and then uses Google services such as YouTube, Google Maps, Google Books, or Google News, Google uses information "associated with" the student's GSFE account to target advertisements.

50. Further, when a K-12 student logs into a GSFE account on a computer which has Google Chrome Sync enabled, remains logged in, and then uses the Chrome browser to conduct internet activities, Google uses the student's data obtained in association with the students' GSFE account to target advertising.

51. Accordingly, Google's statements are false, misleading, unfair and deceptive.

### G. Google Does Not Clearly Disclose Its Practices in Violation of its Pledge

52. In Google's Pledge to Mississippi educators, parents, and students, Google expressly commits to: "Disclose clearly in contracts or privacy policies, including in a manner easy for parents to understand, what types of student personal information we collect, if any, and the purposes for which the information we maintain is used or shared with third parties."

53. Despite this expressed and assumed obligation, Google does not clearly disclose in a manner easy for parents to understand what types of student personal information is collected, maintained, and used, nor does it accurately disclose that it takes certain rights to which it is contractually prohibited from doing.

54. In fact, an educator, a parent, or a K-12 student would have to review the following Google contracts, agreements, terms, and policies to begin to glean what Google does to Mississippi K-12 student information: GSFE Agreement, DPA Agreement, GSFE Privacy Notice, Google's adoption of the Pledge, Google Terms of Service, and the Google Privacy Policy, any help or information pages, and multiple hyperlinks in the help or information pages.

11

55. Next, the educator, parent, or K-12 student would have to reconcile which contract, agreement, term or policy takes priority over any other contract, agreement, term or policy by virtue of Google's inclusion of the following types of statements: (1) the GSFE Agreement which states it is governed by any applicable Order Form but that it takes precedence over any term located at *any* URL; (2) the Google Terms of Service which states, "If there is a conflict between these terms and the additional terms, the additional terms will control for that conflict"; and (3) the GSFE Privacy Notice which reads, "the G Suite for Education Agreement (as amended) takes precedence, followed by this Privacy Policy and then the Google Privacy Policy."

56. Next, the educator, parent, or student would have to obtain any applicable "Order Form" because Google does not make it readily available.

57. Next, the educator, parent, or student would have to determine how the phrase "any URL" was intended to be defined in the GSFE Agreement because Google's use of the term in the Agreement does not comport with the definition of "URL Terms" in the GSFE Agreement (which is defined as merely the Acceptable Use Policy, the SLA, and the TSS Guidelines limits).

58. Next, the educator, parent, or K-12 student would have to determine whether Google's Pledge, the GSFE Agreement, the DPA Agreement, or the GSFE Privacy Notice amount to an "additional term" as stated in the Terms of Service—thus taking priority over the Terms of Service--because these documents are not labeled or identified as such relative to the Google Terms of Service.

59. Next, the educator, parent, or K-12 student would have to determine when certain agreements, policies, or terms apply and when any such documents cease to be applicable.

60. Thus, Google's expressed statement that it clearly discloses, in a manner easy for parents to understand, what types of student personal information Google collects from GSFE accounts, the purposes for which the information is maintained by Google, the purposes for which the information is used by Google, or the purposes for which the information is shared with third parties is false, misleading, unfair and deceptive.

### H. Google's False Representations Of Its Rights

**The Terms of Service:**

61. In Google's Terms of Service, Google states the following:

When you upload, submit, store, send or receive content to or through our Services, you *give Google (and those we work with) a worldwide license to use, host, store, reproduce, modify, create derivative works (such as those resulting from translations, adaptations or other changes we make so that your content works better with our Services), communicate, publish, publicly perform, publicly display and distribute such content.* The rights you grant in this license are for the limited purpose of *operating, promoting, and improving our Services*, and to develop new ones. *This license continues even if you stop using our Services* (for example, for a business listing you have added to Google Maps).

(Emphasis added).

62. Google's statement of (1) being able to take or requiring the taking of a perpetual "worldwide license" to K-12 students' content, (2) for the uses indicated, and (3) for the duration of such a license even after discontinuance of service expressly contradicts, violates, or causes a misrepresentation of Google's rights in the GSFE Agreement, Google's Pledge, the DPA Agreement, and the GSFE Privacy Notice.

63. Accordingly, Google's Terms of Service are false, misleading, unfair and deceptive.

**Google's Privacy Policy:**

64. In Google's Privacy Policy, Google states that it may collect information to provide better services to all of its users by collecting information given by K-12 students,

13

information Google obtains through the use of its services, information about the device used by the student, logged information about the student, location information, and stored information on students' devices.

65. Google's requirement that students agree to Google's Privacy Policy to allow Google to collect information from K-12 students and for the uses indicated expressly contradicts, violates, or causes a misrepresentation of Google rights in the GSFE Agreement, Google's Pledge, the DPA Agreement, and the GSFE Privacy Notice.

66. Accordingly, this language in the Privacy Policy is false, misleading, unfair and deceptive.

67. In its Privacy Policy, Google further claims to utilize cookies or similar technology to identify the students' browser or device, and to collect and store information when the student interacts with services offered to Google's partners (such as advertising) or features that appear on other sites.

68. Google's requirements that students agree to Google's Privacy Policy to allow Google to collect information from K-12 students and for the uses indicated expressly contradicts, violates, or causes a misrepresentation of Google rights in the GSFE Agreement, Google's Pledge, the DPA Agreement, and the GSFE Privacy Notice.

69. Accordingly, this language in the Privacy Policy is false, misleading, unfair and deceptive.

70. Google States in its Privacy Policy:

> Our automated systems analyze your content (including emails) to provide you personally relevant product features, such as customized search results, tailored advertising, and spam and malware detection

Google has no authority to analyze or use student information for any purposes beyond those provided in the GSFE Agreement, Google's Pledge, the DPA Agreement, and the GSFE Privacy

Notice, and the purported taking of such rights is false, misleading, unfair and misrepresents Google's ability to do so.

71. Google States in its Privacy Policy:

We may combine personal information from one service with information, including personal information, from other Google services.

72. Google has no authority to use or combine student information for any purposes beyond those provided in the GSFE Agreement, Google's Pledge, the DPA Agreement, and the GSFE Privacy Notice and the purported taking of such rights is false, misleading, and unfair, and it misrepresents Google's ability to do so.

### VII. VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT, MISS. CODE ANN. §§ 75-24-1, *ET SEQ.* ("MCPA")

73. The State re-alleges and incorporates all prior paragraphs of this Complaint as if stated fully herein.

74. Google is a "person" within the meaning of, and subject to, the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-3(a).

75. Google's marketing, implementing, and administering GSFE accounts (formerly GAFE accounts); its contractual agreements with GSFE customers (and prior versions of agreements); and its statements, terms, and policies expressed to GSFE users amount to conduct of "any trade or commerce," as defined by Mississippi law.

76. As described herein, through Google's false marketing, implementing, and provision of the GSFE accounts, to include Google's statements made in relation to its GSFE Services, Google has in the past and continues to affect commerce through unfair methods of competition and unfair or deceptive trade practices, as prohibited by Miss. Code Ann. § 75-24-5.

77. At all times material to its actions, Google knowingly and willfully violated Miss. Code Ann. § 75-24-5.

15

**Google's Unfair Methods of Competition and Deceptive Acts and Trade Practices.**

78. Through Google's unfair and deceptive scheme, as described fully in the preceding paragraphs and incorporated herein, Google unfairly and deceptively markets, implements, and provides GSFE (formerly Google Apps for Education) and Chrome to Mississippi's K-12 schools and their students. In doing so, Google committed and commits acts of unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce in violation of Miss Code Ann. § 75-24-5.

79. As a result of its unfair methods of competition and unfair or deceptive acts, Google obtained, maintained, and maintains agreements with Mississippi's K-12 schools, which then allowed Google to garner an unfair introduction of its products to Mississippi consumers through individual GSFE user accounts. Upon the opening and using of each GSFE account, Google's unfair and deceptive acts has allowed it to amass GSFE user accounts and gain unauthorized access to K-12 student data.

80. Unbeknownst to Mississippi's GSFE customer schools and their GSFE users, Google secretly accesses, reads, takes, acquires, copies, and uses the GSFE users' content and data for its own benefit and financial gain and in contradiction and violation of Google's multiple expressed commitments to schools and GSFE users.

81. Unbeknownst to Mississippi's GSFE users, Google requires students or those acting on their behalf to agree to (a) terms which do not accurately reflect the rights of the parties, (b) terms which Google has no right to obtain, and (c) terms which Google is expressly prohibited from obtaining.

82. Through its scheme, Google affected commerce by engaging in unfair methods of competition and deceptive acts and trade practices in violation of Miss. Code Ann. § 75-24-5(1).

83. In addition, Miss. Code Ann. § 75-24-5(2) defines "deceptive trade practice[s]" as:

> (e) Representing that goods or services have sponsorship, approval, *characteristics*, ingredients, *uses, benefits*, or quantities *that they do not have* or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; ...
>
> (g) Representing that goods or services are of a *particular standard, quality, or grade*, or that goods are of a particular style or model, *if they are of another*; ...
>
> (i) Advertising goods or services with intent not to sell them as advertised; ...

Miss. Code Ann. § 75-24-5(2)(e), (g), & (i) (emphasis added).

84. Through the scheme, Google violated § 75-24-5(1), (2)(e), 2(g), & 2(i).

85. With the opening of each Mississippi GSFE user account and/or by requiring GSFE users to agree to the contradictory Terms of Service and Privacy Policy and other terms, Google committed and continues to commit a separate violation of Miss. Code Ann. § 75-24-5 with each GSFE user account.

86. Google's conduct described herein constitutes multiple, separate, distinct, knowing and willful violations of Miss. Code Ann. § 75-24-5 for each GSFE user account created.

87. Because Google is exploiting some of Mississippi's most vulnerable citizens through its false, misleading, unfair and deceptive statements and practices, the Attorney General has determined that Google has used and continues to use methods, acts, and/or practices prohibited by Miss. Code Ann. § 75-24-5, that these proceedings are in the public's interest, and that the imposition of an injunction against Google prohibiting the unfair and deceptive conduct

is in the public interest. Pursuant to Miss. Code Ann. § 75-24-9, the State is seeking the entry of a permanent injunction against Google that includes without limitation:

    a.    Ordering Google to cease its unfair and deceptive conduct;

    b.    Ordering Google to fully disclose (without limitation or conditional language) the extent of Google's collection, processing, and use of data; and,

    c.    Ordering Google to clearly state and abide by the limitations established by Google's statements, commitments, guarantees, and agreements with the Mississippi GSFE customers and GSFE users.

    d.    Google's violations justify civil penalties of up to $10,000 for each violation of the MCPA (Miss. Code Ann. § 75-24-19(1)(b)) and injunctive relief (Miss. Code Ann. § 75-24-9). The opening of each and every GSFE user and customer account created by Google violates the MCPA and is considered a separate violation pursuant to Miss. Code Ann. § 75-24-19(1)(b).

## VIII. AD DAMNUM

The State of Mississippi, by and through its Attorney General Jim Hood, respectfully requests the entry of judgment against Google, for all the relief requested herein and to which the State may otherwise be entitled, including without limitation:

    1.    Entering Judgment in favor of the State against Google in a final order;

    2.    Enjoining Google and its employees, officers, directors, agents, successors, assignees, merged or acquired predecessors, parent or controlling entities, subsidiaries, and all other persons acting in concert or participation with it, from affecting commerce within the State of Mississippi by engaging in unfair methods of competition and unfair or deceptive trade

practices in violation of Mississippi law and ordering temporary, preliminary, or permanent injunction;

3. Declaring that each act by Google as described in this Complaint constitutes multiple, separate violations of Mississippi law;

4. Imposing civil penalties in the amount of $10,000 for each GSFE account opened in the State of Mississippi in violation of Miss. Code Ann. §§ 75-24-1, *et seq.*; and,

5. Granting the State:

   a. The cost of investigative and reasonable attorneys' fees, as authorized by Miss. Code Ann. §§ 75-24-1, *et seq.* and, specifically, § 75-24-19(1)(b);

   b. Pre-judgment and post-judgment interest; and,

   c. All other general relief as provided by law and/or as the Court deems appropriate and just.

Plaintiff asserts claims herein in excess of the minimum jurisdictional requirements of this Court.

Respectfully submitted, this the 13th day of January, 2017.

JIM HOOD, ATTORNEY GENERAL
STATE OF MISSISSIPPI

BY: _____
George W. Neville, MSB #3822
Jacqueline H. Ray, MSB #100169
Mary Jo Woods, MSB #10468
Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Tel:  (601) 968-3680
Fax:  (601) 359-2003
gnevi@ago.state.ms.us
jacra@ago.state.ms.us
mwood@ago.state.ms.us

19

**Of Counsel:**

**John W. Kitchens, MSB #101137**
**Kitchens Law Firm, P.A.**
**Post Office Box 799**
**Crystal Springs, Mississippi 39059**
**Tel:    (601) 892-3067**
**Fax:    (601) 892-3057**
**jkitchens@kitchenslaw.net**