## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**THE STATE OF MISSISSIPPI,** *ex rel.***,**
**LYNN FITCH, ATTORNEY GENERAL,**

     **PLAINTIFF**

**VS.**                               **Civil Action No. 1:19-CV-220-SA-DAS**

**GOOGLE LLC f/d/b/a GOOGLE, INC.,**
**And YOUTUBE, LLC,**

     **DEFENDANTS**

## SECOND AMENDED COMPLAINT

Plaintiff, the State of Mississippi, by Lynn Fitch[1], Attorney General ("the State") files[2] this Second Amended Complaint against Defendants, Google LLC, formerly doing business as Google, Inc. (hereinafter "Google"), and YouTube, LLC (hereinafter "YouTube") and alleges as follows:

## I.    INTRODUCTION

1.    The State of Mississippi, by and through the Attorney General, brings this action against Defendant Google under authority of the Mississippi Consumer Protection Act, MISS. CODE ANN. §§ 75-24-1, *et seq.* and against Google and YouTube pursuant to 15 U.S.C. § 6501, *et seq.* and specifically, 15 U.S.C. § 6504.

2.    This action arises from Google's (a) unfair methods of competition and (b) unfair and deceptive trade practices regarding Google's false statements, contractual promises,

---

[1] This matter was originally filed in the name of Jim Hood as Attorney General of the State of Mississippi. On January 9, 2020, Lynn Fitch succeeded Jim Hood as Mississippi's Attorney General.

[2] The State files its Second Amended Complaint pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B) as its prior amendment was made pursuant to Rule 15(a)(2) and by agreement of the previous parties.

commitments, and material omissions beginning from 2007 and continuing to the present. Against its representations and omissions, Google collects, uses, processes, stores, and retains the personal information and data of Mississippi K-12 students who use Google's G Suite for Education ("G SUITE")[3] and Chrome Sync. Google does this to track students across the internet, learn their behavior, and uses it for commercial purposes like building student profiles and advertising—all unrelated to providing the G Suite service for K-12 schools.

3. This action further arises from Google's and YouTube's concerted past and continuing violations of the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.* for their collection, use, processing, storage, and retention of personal information and data of Mississippi children under the age of thirteen (13) who have G SUITE accounts.

**A.    Google's actions and violations of the Mississippi Consumer Protection Act, MISS. CODE ANN. §§ 75-24-1, et seq.**

4. From 2007 to the present, Google is guilty of an overarching scheme of deception aimed at Mississippi's schools, youth, and parents to collect, use, process, store, and retain student personal information and data (some accessed by merely opening a G SUITE account) in violation of its contractual promises, its own policies, and the expressed limitations to which it agreed through multiple written assurances, including but not limited to the G SUITE for Education Agreements with Mississippi Schools, Data Processing Agreements, G SUITE Privacy Notices, and the K-12 School Service Provider Pledge to Safeguard Student Privacy ("the Pledge"). Further, Google has intentionally omitted from its statements material information about its conduct, all to further advance its scheme of unfair competition and deception, and to monopolize the market for K-12 school service providers.

---

[3] G SUITE was formerly known as "Google Apps for Education" ("GAFE"). All references to G SUITE include the operative period of 2007 to the present and applicable Google product, whether GAFE or its successor.

5.      To Mississippi K-12 schools that use its services, Google promises that it safeguards and uses student personal information it collects only to provide the G SUITE services, that it does not use or process student data for advertising purposes, and that it will not share student data with third-parties who are not contractually allowed to obtain it. These statements are false, and Google omits its actual conduct.

6.      Google has also represented that it did not use Mississippi children's email content for advertising purposes, that it did not submit their email content through advertising processes, and that it only uses email content to provide the service of Gmail to the students. These statements are also false.

7.      Finally, Google warrants that all its conduct is compliant with the Children's Online Privacy Protection Act of 1998 ("COPPA"), which would include the corresponding regulations implementing COPPA. These guarantees are explicitly false and are designed solely to further Google's scheme of unfair competition and deception in Mississippi.

8.      Through its deceptive promises, omissions, and commitments, Google claims that it offers G SUITE for "free." In reality, Google gains unfettered access to vast amounts of valuable student personal information and data solely as a result of the students' G SUITE accounts. Once a student signs up for a G SUITE account, Google uses and processes students' personal information and data to track, record, and save the online activity of Mississippi's children. With their personal information and activity logs, Google builds individual profiles of each student unrelated to educational activities and services, all of which Google uses for its own commercial and advertising purposes. The scheme is very simple: G SUITE is the gateway to a treasure trove of personal information and data on Mississippi's youth to which Google would not otherwise have access.

3

9.    Google's scheme both secures it an unfair advantage over its competitors by offering purported "free" educational services and deceives the Mississippi public regarding its data and privacy practices. Thus, Google's deceptive scheme amounts to (a) unfair methods of competition affecting commerce, and (b) unfair and deceptive trade practices, both in violation of Mississippi's Consumer Protection Act, MISS. CODE ANN. §§ 75-24-1, *et seq.*

10.    Since 2007, Google's deceptive actions are continuing as to not only the misrepresentations and omissions, but also as unfair methods of competition due to Google's retention and use of Mississippi student data collected from 2007 until the present. Further, Google has used Mississippi student data from the beginning for its own commercial use and advantage by making derived data (data produced from other data), products, and services from Mississippi student data. As such, Google's violations are continuing in nature from 2007 to the present. The State seeks injunctive relief to not only halt the deceptive practices and unfair methods of competition alleged herein but to require Google to account to the Court all data collected and retained, the derived data and individualized profiles of students, and all services and products which have been commercially enhanced or created by the alleged collected data. From this accounting, the State seeks further injunctive relief by way of the Court (a) enjoining the further use of unlawfully obtained corpus of data from Mississippi students; (b) enjoining the unlawful use of data from Mississippi students; and (c) further ordering the destruction and disgorgement of data, the derived data, and disgorgement of the value of those unlawful benefits.

**B.    Google's and YouTube's violations of COPPA.**

11.    Through Mississippi G SUITE accounts, Defendant Google is an operator of an online service directed to children. In this capacity, it has actual knowledge that Mississippi children under the age of thirteen (13) are using the G SUITE service and accessing both G

SUITE services ("Core") and non-G SUITE services (called "Additional Services" which include other Google products like Search, YouTube, Maps, Photos, Panoramio, Chrome, Books, News, Play, and Voice, etc.). When a Mississippi student under the age of thirteen (13) logs into their G SUITE account and uses Google's products or services, Google collects personal information and data from Mississippi children for commercial purposes unrelated to the educational purpose for which the G SUITE accounts were created; Google uses and stores the information for purposes other than for educational purposes; Google stores, maintains, and uses the data for purposes beyond the purpose for which the data was originally collected; and Google unlawfully discloses the child's personal information to third parties. Further, through Mississippi G SUITE accounts, Defendants Google and YouTube, acting in concert, are operators of online services that have actual knowledge that Mississippi children under the age of thirteen (13) are using the G SUITE and YouTube services. When a Mississippi student logs into the G SUITE account through Google and then accesses YouTube, Google and YouTube, acting in concert, collect personal information from Mississippi children they know to be under the age of thirteen (13). Google and YouTube, acting in concert, collect this information for reasons other than for the educational purposes for the G Suite accounts; both Defendants use and store the information for purposes other than for the educational purposes; and both Defendants store, maintain, and use the data for purposes beyond those for which the data was originally collected. Further, when a Mississippi child under the age of thirteen (13) uses their G Suite account to access YouTube, Google and YouTube unlawfully condition the use YouTube on the collection of that child's data. Further, each Defendant unlawfully discloses Mississippi children's personal information to each other and to third parties.

12.     Neither Google nor YouTube ever obtain verifiable parental consent.

13.     Google's and YouTube's actions violate COPPA.

**C.     The Operative Time Period of Google's and YouTube's Actions**

14.     The operative time period for this action begins in 2007 when Google first began offering G Suite to Mississippi schools and it continues to the present. Google purchased its subsidiary, YouTube, in 2006. Further, while Google's statements and material omissions form the basis, in part, of its unfair competition and deceptive conduct, the examination of its underlying conduct is necessary to demonstrate the unfair and false nature of its statements. Throughout the operative time period, Google has occasionally modified both its underlying data processes and its representations applicable to G SUITE and Mississippi K-12 students.[4] YouTube has also modified its underlying data processes and interactions with Google for the collection, use, processing, storage, retention, and exchange of Mississippi children's information and data. When the State alleges that Google did or did not perform an act through the provision of its services, the allegation includes all subsequent versions, operations, and iterations of Google's processes as applicable to all corresponding versions and iterations of Google's representations, promises, and commitments. Likewise, when the State alleges that Google or YouTube did or did not perform an act through the provision of its/their services, the allegation includes all subsequent versions, operations, and iterations of Google's and YouTube's processes and services.

---

[4] For instance, until at least the spring of 2014, Google submitted Mississippi K-12 students' email content through a server Google called "Content Onebox" ("COB"). Despite Google's representations to Mississippi schools and K-12 students that it would not submit student email content through its advertising processes, Google knowingly and deliberately used COB for advertising purposes.  Based on the limited documents produced to date, the State alleges that Google continues to process email content through Content Onebox.

**D.     Parties**

15.     The State of Mississippi, by and through Attorney General Lynn Fitch, as chief legal officer for the State of Mississippi, brings this action in its sovereign capacity. The State of Mississippi is a sovereign created by the Constitution and laws of the State of Mississippi. As such, Mississippi is not a citizen of any state. Lynn Fitch is the State's duly elected Attorney General. The Attorney General brings this action on the State's sole behalf pursuant to his authority granted by MISS. CONST. art. 6, § 173; MISS. CODE ANN. § 7-5-1; and, specifically MISS. CODE ANN. §§ 75-24-1, *et seq*. Further, 15 U.S.C. § 6504 specifically allows the Attorney General to bring this action for COPPA violations (Count II) against Google and YouTube. The State has tendered notice of this Second Amended Complaint to the Federal Trade Commission, pursuant to 15 U.S.C. § 6504(a)(2).

16.     Google LLC, formerly doing business a Google, Inc., is a limited liability company with its principal place of business in Mountain View, Santa Clara County, California. The State previously filed suit against Google, Inc.; which answered and admitted Plaintiff's allegations about its identity. During the pendency of this suit, Google, Inc., converted to Google, LLC. All references to "Google" will include its acts as both Google, Inc., and Google, LLC. At all times material herein (years 2007 to the present), Google has been doing business, and continues to do business, in the State of Mississippi. Google has appeared in this matter. At all times material to this Complaint, acting alone or in concert with others, Google has advertised, marketed, and distributed its G SUITE service to consumers throughout Mississippi and the United States. At all times material to this Complaint, acting alone or in concert with Defendant YouTube, Google formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

17.     Defendant YouTube, LLC, is a Delaware limited liability company with its principal place of business in San Bruno, California and is a wholly owned subsidiary of Google. YouTube transacts or has transacted business in this district and in the State of Mississippi. YouTube has not appointed an agent for service of process in Mississippi and may be served with process by serving its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808. At all times material to this Complaint, acting alone or in concert with Defendant Google, YouTube has advertised, marketed, and distributed its YouTube video sharing platform to consumers throughout the United States. At all times material to this Complaint, acting alone or in concert with Defendant Google, YouTube formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

## II.  JURISDICTION

18.     Google removed this matter to this Court, and 28 U.S.C. § 1331 grants this Court jurisdiction over the State's action brought pursuant to 15 U.S.C. § 6504(a)(1) (Count II). This Court has supplemental jurisdiction over the State's claims for Google's violations of the Mississippi Consumer Protection Act, MISS. CODE ANN. §§ 75-24-1, *et seq.*, including those for Google's misrepresentations of COPPA compliance. Google and YouTube are subject to personal jurisdiction in this District because both do business and perform services in this District.

## III.  VENUE

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(3) in that each of the Defendants is deemed a resident of this judicial district by virtue of it being subject to

personal jurisdiction within this district; and a substantial part of the acts or omissions giving rise to the State's claims occurred within this district.

## IV. FACTUAL BACKGROUND

20.     All allegations herein arise from facts currently known, information, and belief.

**A.     Google's G Suite for Education Services, Data Collection, and Data Use**

21.     G SUITE is a web-based service that Google markets as "free" to educational institutions, including K-12 schools in Mississippi.

22.     To deliver G SUITE to schools, Google contracts with an educational institution (referenced in relevant Google contracts and policies as "Customer school" or "Customer"). Because Google markets G SUITE as purely educational, schools may enter into such contracts directly with Google, apart from parents and students. The name of the products, Google Apps *For Education* and G Suite *For Education* expressly denote this purpose. Notably, Google does not contract with students or their parents for the provision of G SUITE or any other Google services accompanying it.

23.     When a Customer School contracts with Google to use G SUITE, Google requires that the Customer School create individual Google accounts ("G SUITE accounts") for students. Upon enrollment, each student receives a username and password identifying that G SUITE student user with a particular G SUITE account in the Customer School's domain. The student's G SUITE account is a Google Account created and managed by a school for the use of students and educators. In fact, Google assures each Mississippi school that they are the administrators of the accounts and that Google is merely a "data-processor." Notably, while the minimum age for opening a standard Google account is thirteen (13), G SUITE accounts are offered to all Mississippi students in grades K-12 irrespective of age.

1.    **Upon creation of G SUITE accounts and within all Google services by virtue of the G SUITE account, Google collects and maintains student personal information and data and creates individual profiles of Mississippi students for non-educational, commercial purposes.**

24.    In G SUITE, Google collects various personal information from the schools and students, including their names, email addresses, telephone numbers, age,[5] and gender. Google further collects a wide range of student personal information *each time* a student logs in to his or her G SUITE account. This includes device information, such as the hardware model, operating system, unique device identifiers, and mobile network information; the student's internet protocol (IP) address, GPS, and other location sensors; unique application numbers; and cookies or similar technologies. This data allows Google to know the specific devices an individual student uses, know the location of each student when logged in to his or her G SUITE account, and track each student's online activity. Google collects all this information solely via schools' and students' access (log-in) and use of G SUITE.

25.    Google associates all this information with each student's individual G SUITE account by way of a technology Google calls the "Google Accounts and ID Administration," or "GAIA ID." Like a member ID, the GAIA ID is Google's identification management system and is essentially a set of numbers specific to an account that attaches to each piece of collected data from a G SUITE child user's online activity.

26.    Indeed, the GAIA ID is each student's individual identity across every Google service the student accesses and across every device a student uses to access Google services. Thus, no matter what device a student uses to log in—whether at school, home, or a friend's house; and whether on a PC, tablet, or smart phone—, Google knows the identity of individual

---

[5] Or, by virtue of the account, Google knows which students are minors and those students who are under thirteen (13) years old.

students by virtue of their GAIA IDs and/or devices, and Google tracks their online activity irrespective of whether the student is signed into the G SUITE account. Students' individual GAIA IDs and associated data remain constant even if they obtain a new Google account in the future. Google does not inform Mississippi schools or students about GAIA ID, its tracking, or its profiling of Mississippi student data.

27.     Google does not only *track* individual students' online activity, but also records and stores it—*among other things*, what students click on, the websites they visit, the search terms they use, the videos they watch, the comments they've posted or "liked," and the content of the emails they send and receive. Google thus "logs" all students' online activity while they are signed in (or even signed-out), stores the logs within Google servers, and associates students' logs with their individual GAIA IDs and in their G SUITE account. Google does not inform Mississippi schools or students about GAIA ID, its tracking, or its profiling of Mississippi student data.

28.     G SUITE accounts offer students access to a "suite" of Google internet services and include twelve (12) applications for the G SUITE account: Gmail, Calendar, Contacts, Drive, Docs, Forms, Groups, Sheets, Slides, Talk/Hangouts, Vault, and Classroom. Google refers to these twelve (12) applications as the G SUITE "Core Services." The Core Services are not publicly available; *it is only through the creation and use of a G SUITE account* that students can *access them*. Through students' use of G SUITE accounts, Google collects data and uses GAIA ID to identify the student's online activities in the Core Services. Google does not inform schools, parents, or students that it perpetually associates collected data to students' accounts.

29.     In addition to the Core Services, Google promotes what it calls "Additional Services." These include applications such as Search, YouTube, Maps, Photos, Books, News,

Play, and Voice, etc. Unlike the Core Services, a G SUITE account *is not required* to access to the Additional Services. However, when a student signs in to his G SUITE account and accesses an Additional Service, Google (and YouTube when the student accesses YouTube)[6] collects, processes, and uses the student's GAIA ID to associate that child's data with his personal G SUITE account. Neither Google nor YouTube can associate collected data from a child accessing the "Additional Service" merely as an unidentified public user, but through the G SUITE account Google and YouTube can use GAIA to identify the student, associate data personally to her, and store her personally identifiable data. Neither Google nor YouTube informs schools, parents, or students of any persistent identifier or that it perpetually associates collected data with Mississippi students' accounts.

30.    In this context, Additional Services are not "additional" to G SUITE at all. Like Google or non-Google websites, these services are freely accessible to any person with access to the internet, whether he or she has a Google account or not. But unlike anonymous internet users, Google and You Tube can identify the child user who is logged in to their G SUITE account, collect and retain data, associate that data to the child, and track that child's activity across the Additional Services. Thus, these services "add" nothing to G SUITE other than Google's (and YouTube's) ability to *additionally and individually* track, monitor, and profile Mississippi students' online activities for their own commercial purposes.

**2.    Google also uses G SUITE to collect and maintain student data from across the internet for its own commercial purposes.**

31.    Google's tracking is not limited to the use of Google services. When Mississippi K-12 students who are logged in to the G SUITE accounts access non-Google websites, Google

---

[6] All allegations herein pertaining to Google's data collection, storage, and usage also apply to YouTube for the circumstances in which Mississippi K-12 students with G SUITE accounts access YouTube.

still records their internet activity, associates it with each students' personal G SUITE account, and retains that information in direct association with each individual student. Google would not be able to associate any of this data to an individual Mississippi student but for schools' and students' use of G SUITE. Google never informs schools, parents, or children of this activity or the data collected.

32.     More nefarious, even when a Mississippi student accesses a Google service— "Additional" or otherwise—and is *not* signed in to their G SUITE account, Defendants *still* collect, retain, and store that student's information and associate it with the student's device and/or GAIA ID. For public or anonymous users of Google sites, Defendants collect and retain data from those users and associate it with the particular *device* they use, rather than a particular person. Thus, when a Mississippi student uses a particular device to access a Google website, Google (and YouTube when on YouTube) collects and stores information about the student's device. However, when the same student signs in to his G SUITE account using that *same* device she used when not signed in, Defendants match the device (and all activity associated with it from prior sessions) to the individual student. Defendants then associate the student's prior activities while *not* signed in with the student's G SUITE account. Thus, although a G SUITE account is not required to access the Additional Services, *it is only through the G SUITE school account that Defendants can collect, track, and maintain information on a Mississippi student who uses an Additional or other Google or non-Google service—whether they are signed in to the G SUITE school account or not.* Defendants never inform schools, parents, or children of this activity.

33.     Thus, while Google tells school administrators that they can enable or disable students' use of Additional Services through the G SUITE account, Defendants *still* collect,

track, and store—be it through the G SUITE account, device id, or other yet undiscovered
means—Mississippi student information and data, associate the data with the individual student,
and store it in relation to the individual student.

34.     Simply put, if the Mississippi student did not have a G SUITE account required
for use with the Core Services, the student would be anonymous like other consumers who have
no Google account. But through the G SUITE school account—and only by virtue of it—
Defendants know and associate all the Mississippi student's online activities. Defendants do not
inform Mississippi schools or students of this activity.

35.     Using the technologies and processes discussed above, Defendants use students'
personal information and data that they obtained through their use of G SUITE accounts, the logs
of students' online activity across the internet, and other data to create individualized profiles on
each student. Defendants associate these individualized profiles with each individual student by
way of his or her GAIA ID. Like their personal information and activity logs, students'
individual profiles follow them from Google account to account by way of their GAIA ID.

36.     Contrary to its contractual promises and commitments, and concealed by material
omissions, Google utilizes student personal information, activity logs, the individual profiles
they comprise, email content, and additional but yet undiscovered data to support its commercial
and advertising purposes, including but not limited to the building of individualized profiles of
students consisting of, among other things, their identities and associated activity logs; the
service of advertising to students and others; improving its advertising technologies; creating
new Google services; sharing data and analytics with third parties; and using Mississippi K-12
student data for purposes far beyond educational uses or even to provide the Google service the
student is using.

37.     All allegations herein apply regardless of whether students are signed in to their G SUITE accounts through a Google website or have Chrome Sync enabled in Google's Chrome browser.

   **3.     Within the Gmail Core Service, Google has scanned students' email content for non-educational, advertising, and commercial purposes.**

38.     Gmail is Google's web-based email service and is one of the G SUITE Core Services. Much like its logging of student online activity, Google also scans the content of each G SUITE student's email message.

39.     Prior to April of 2014, Google affirmatively represented to Mississippi schools that student Gmail would not be used for *any purpose* other than to provide the service of Gmail to the student. Further, Google assured Mississippi schools that no student data would be processed by Google's advertising systems and there would be no ad-related processing in G SUITE.

40.     But prior to April of 2014 (at least according to Google), and within each Mississippi student's G SUITE Gmail account, Google used a technology called Content Onebox ("COB") and multiple servers associated with COB to extract information from the text within the student's email and process it. The COB process allowed Google to acquire student email content and to understand the concepts and meaning of the email content through its advertising processes. Similarly, with the use of users' GAIA IDs, Google can inspect overall attributes of users' inboxes and review their entire email history. The data extracted then goes to Google's advertising team for advertising purposes and to generally improve advertising in Gmail.

41.     On March 13, 2014, Google publicly confirmed that the emails of all G SUITE for education end users were in fact scanned, processed, and data-mined for potential advertising via Google's *automated processes that could not be disabled*—even for G SUITE educational

customers who elected not to receive ads. On April 30, 2014, Google announced that it would permanently remove all ad scanning in Gmail for G SUITE. Google further explained that it would no longer collect or use student data in G SUITE for education services for advertising purposes.

42.     However, Google retains the data unlawfully collected prior to April 30, 2014, and continues its use of that data, to enhance or benefit Google services, improve its advertising services, compile individualized profiles of students, target students, and/or create new Google services. As such, the violations of unfair methods of competition and deception are continuing in nature. Further, the State seeks to confirm Google's statement and alternatively alleges that Google continues to data-mine the email content of Mississippi's students and use it for purposes beyond providing the Gmail service.

**B.     Google misrepresents and materially omits its data collection practices in violation of multiple contractual promises, commitments, and written assurances.**

43.     Google began rolling out its G SUITE platform to Mississippi K-12 schools in 2007, and Mississippi K-12 schools have continued to use G SUITE from 2007 to the present.

44.     As part of providing G SUITE services, Google required that Mississippi K-12 schools enter into various agreements that Google has revised many times since the schools began using G SUITE. These Agreements include the G Suite for Education (Online) Agreement[7] (the "G SUITE Agreement") and the Data Processing Amendment to the G SUITE Agreement[8] (the "Data Processing Amendment" or "DPA").

---

[7] Previously, Google also referenced this Agreement as the "Google Apps for Education Agreement."

[8] Since 2012, Google has referenced various versions of this document as the "Data Processing Amendment to Google Apps Enterprise Agreement," the "Data Processing Amendment to G Suite Agreement," and "Data Processing Amendment to G Suite and/or Complementary Product Agreement."

45.     The G SUITE Agreement and DPA reference and incorporate terms from the Google Apps Privacy Notice ("G SUITE Privacy Notice"), which like the G SUITE Agreement and DPA, have themselves seen numerous versions since 2007.

46.     Within these agreements, Google makes multiple commitments and statements concerning the scope of its student data collection and usage practices.

47.     No Mississippi school or parent contracts with YouTube for the provision or use of Google's G SUITE services in YouTube.

1.     **Google misrepresented and materially omitted its student data collection, use, processing, storage, and retention in its Agreements and additional commitments effective between 2008 and 2014.**

48.     Between October of 2008 and May of 2014, the G SUITE Agreement's provisions controlling Google's collection and use of student data were essentially the same. First, Google promised that it would not disclose students' "Confidential Information" or use it for any purpose other than to "exercise rights and fulfill obligations under" the Agreement. Those obligations are to allow for the creation of an account to access the Core Services.

49.     Google's definition of "Confidential Information" expressly incorporates another of its contractual terms, "Customer Data," which itself includes "data, including email, provided, generated, transmitted or displayed" by Mississippi K-12 students via the G SUITE Core Services. Because Google requires that a G SUITE account be opened in order to access and use the Core Services, all student data derived from account creation and G SUITE access are necessarily "Customer Data."[9] Thus, Google promised to only use data that students or schools provide, generate, transmit, or display through G SUITE account creation and access to G SUITE for one purpose: only to exercise rights and fulfill obligations under the G SUITE

---

[9] The Agreements specifically state they govern "Customer's **access to** and use of the Services;" "[U]se of Services to (a) provide End User **Accounts** to it End Users . . . .";

Agreement. Confidential Information also includes data that would be "considered confidential under the circumstances," such as a Mississippi child's private on-line activities, device information, location, etc. Google thus promised not to use students' private online activities for purposes other than to exercise rights and fulfill obligations under the G SUITE Agreement.

50.     Also in the G SUITE Agreement, Google promised that it would *comply* with the G SUITE Privacy Notice. The G SUITE Privacy Notice in effect between 2008 and 2014 set out both what personal information Google would collect from students and how Google would use it. First, Google would collect personal information upon account creation, such as contact information. Google also would collect a wider range of personal information each time a student used G SUITE,

> such as account activity (including storage usage, number of log-ins), data displayed or clicked on (including UI elements, ads, links); and other log information (including browser type, IP-address, date and time of access, cookie ID, and referrer URL).

As to *how* Google would use this information, Google gave three purposes, each consistent with exercising its rights and fulfilling its obligations under the G SUITE Agreement: (1) to provide the G SUITE services; (2) to improve G SUITE services; and (3) to send to the student.

51.     Neither the G SUITE Agreement nor the G SUITE Privacy Notice disclosed that Google would use the student personal information it collected as described above (account opening, log-in, and account use), or that it collected such data to create student profiles for Google's own commercial and advertising purposes. Despite Google's promises and commitments within the G SUITE Agreement and G SUITE Privacy Notice, Google collected student personal information to do just that.

52.     The G SUITE Agreements effective during this time stated that Google would not show advertising to G SUITE account holders by default, but Google provided school

administrators the option to enable advertisements. In any event, Google (1) never disclosed that

such advertising, if enabled, would entail *targeted* advertising based on Google's collection of

student personal information and associated logs of their online activity; and (2) never disclosed

that, whether advertising was enabled or disabled, Google would use student personal

information and associated activity logs to create and build student profiles for commercial and

advertising purposes.

53.     Google began using its Data Processing Amendment in November of 2012, and

thereafter, the G SUITE Agreement incorporated the DPA by reference. The DPA supplements

the G SUITE Agreement regarding Google's *processing* of students' "Customer Data," which

the DPA originally defined as "email and other data (including personal data) provided,

generated, transmitted, or displayed" via G SUITE Core Services by end users, including

students.

54.     As in the G SUITE Agreement and G SUITE Privacy Notice, Google promises in

the DPA to only process student "Customer Data" to (1) provide the G SUITE Services; (2)

operate, maintain, enhance and support the infrastructure used to provide the G SUITE Services;

(3) comply with users' processing instructions in their use of G SUITE; and (4) respond to

customer service requests.

55.     To the extent Mississippi K-12 students use Additional Services or non-Google

services, the DPA provided that Google would allow these sites access to students' personal

information only "as required for the *interoperation*" of G SUITE Core Services and the

applicable Additional Service or non-Google service.

56.     The interoperation of G SUITE Core Services with other Google or non-Google

services requires neither wholesale data collection and association, nor the creation of student

profiles with every piece of personal information and activity logs Google collects, nor the processing of such data for commercial and advertising purposes.

57.     Like the G SUITE Agreement and G SUITE Privacy Notice, the DPA assures that Google processes student personal information for limited purposes—none of which includes its processing to create profiles of students for Google to use for its own commercial and advertising purposes. Despite Google's promises and commitments within the DPA, Google collected and processed student personal information to create profiles of students that Google used for its own commercial and advertising purposes.

58.     Absent from any statements during this time is Google's practice of collecting data from student G SUITE accounts and from Core Services to use in Google's Additional Services. Also absent is Google's practice of collecting student data in the Additional Services, tagging it with students' GAIA IDs, storing it in association with individual students, profiling individual students, and using their data throughout Google's services.

59.     Google also collected Mississippi student data from their non-Google website activity and associated it with their individual G SUITE accounts.

60.     There is simply no indication in Google's operative documents that it was wholesale collecting Mississippi K-12 student data, associating it with each student's particular account, and using it for essentially whatever purpose Google chose, so long as it did not show advertisements within the Core Services. These omissions were material and deceptive, as Google never informed Mississippi schools, their parents, or the students of the true nature of Google's use of identifiable student information.

61.     Also contrary to its commitments, Google has and continues to unlawfully disclose and share with third parties confidential data of Mississippi students that Google collected via G SUITE.

**2.     Google misrepresented its student data collection, use, processing, storage, and retention in agreements and additional commitments effective from 2014 to the present.**

**a.     The G SUITE Agreement and DPA**

62.     In 2014, Google updated the G SUITE Agreement and DPA. The updated G SUITE Agreement maintained Google's promises detailed above, and Google added a new promise that "Google does not serve Ads in the Services *or use Customer Data for Ads purposes*."

63.     "Advertising purposes" is not limited to the action of displaying advertising to a student, and it is not limited to within the Core Services. For example, and by way of Google's alleged actions and processes:

- When Google uses a Mississippi K-12 child's device information from the G SUITE log-in process to determine that child's location and display an ad in an Additional Service that is geographically targeted to the student, Google violates the Agreement;

- when Google uses the gender of a Mississippi K-12 child to recommend the child purchase a book more geared to the demographic of the child's sex, Google violates the Agreement;

- when Google shares with YouTube identifiable student information provided through G SUITE account creation and G SUITE log-in for YouTube to use to identify students, track and compile their online activity, and compile individual profiles of students (whether to improve YouTube services, to target advertising in YouTube or elsewhere, or to improve other Google services), Google violates the Agreement;

- when Google observes the child's online activity to expand its knowledge of how people of that child's age, gender, and location (all student data) interact with particular content or ads or obtains "impressions" related to the child, that is an advertising purpose prohibited by the Agreement; and

- when Google takes Mississippi K-12 student data, removes the GAIA ID to purportedly "anonymize" that data, and adds it to a corpus of other data to use towards advertising, that is an advertising purpose prohibited by the agreements.

- Likewise, Google's use of analytics derived from online activities in conjunction with the student's data of age, gender, and location are prohibited Google activities in violation of the Agreement.

These examples, which have occurred and continue to occur, and other yet undiscovered conduct, all constitute violations of the G SUITE Agreement. Further, each of the above occurrences exemplifies the type of derivative use or creation of derived data that establish a continuing violation of unfair methods of competition and deception.

64.     Likewise, the amended DPA maintained its prior promise to only process "Customer Data"[10] in accordance with schools' or end-users' instructions, to provide G SUITE, or to provide customer support. The amended DPA further promised, "Google will only process Customer Data in accordance with this Agreement and *will not process Customer Data for any other purpose*." It continued, "For clarity, and notwithstanding any other term in the Agreement, Google will not serve Advertising in the [G SUITE] Services *or use Customer Data for Advertising purposes*."

65.     As with the prior version of the DPA, Google again promised that, when students' accessed Google or non-Google services outside of G SUITE Core Services, it would only allow those other services access to students' "Customer Data" as required for the interoperation of those other services and G SUITE.

---

[10] The amended DPA defined, and still defines, "Customer Data" as "data (which may include personal data and the categories of data referred to in Appendix 1) submitted, stored, sent or received via the [G SUITE] Services by Customer, its Affiliates, or End Users." Appendix 1 adds that such data "may include user IDs, email, documents, presentations, images, calendar entries, tasks and other electronic data."

66.     Despite its promises, Google collected, used, processed, stored, and retained student personal information and associated activity logs to create individual profiles for purposes beyond the limitations it set out in the G SUITE Agreement and DPA—namely, for its own commercial and advertising purposes.

### b.     The G SUITE Privacy Notice

67.     Google made multiple changes to its G SUITE Privacy Notice beginning in February of 2016. The notices first describe the "personal information" Google collects from students upon account creation. The August 2016 version states, e.g.,

> A [G SUITE] account is a Google Account created and managed by a school for use by students and educators. When creating this account, the school may provide Google with certain personal information about its students and educators, including, for example, a user's name, email address, and password. Google may also collect personal information directly from users of [G SUITE] accounts, such as telephone number or a profile photo added to the [G SUITE] account.
>
> Google also collects information based on the use of our services. This includes:
>
> - device information, such as the hardware model, operating system version, unique device identifiers, and mobile network information including phone number of the user;
>
> - log information, including details of how a user used our service, device event information, and the user's Internet protocol (IP) address;
>
> - location information, as determined by various technologies including IP address, GPS, and other sensors;
>
> - unique application numbers, such as application version number; and
>
> - cookies or similar technologies which are used to collect and store information about a browser or a device, such as preferred language and other settings.

68.     The Privacy Notice then addresses *how* Google will and *will not* use this information, affirmatively addressing "limitations on advertising" when students signed in to their G SUITE accounts venture outside of G SUITE Core Services:

> Outside of the [G SUITE] Core Services, Google products and services may show ads, as described in the Google Privacy Policy. For [G SUITE] users in Primary/Secondary (K-12) schools, *Google does not use any personal information* ***(or any information associated with a Google account)*** *to target ads.*

(emphasis added). Updated several months later, another version adds, "Google does not serve ads in the Core Services *or use personal information collected in the Core Services for advertising purposes.*" This proscription includes data collected to access or log-in for use of Core Services—such data cannot be used for advertising purposes. Google continues,

> For [G SUITE] users in primary and secondary (K-12) schools, *Google does not use any user personal information (or any information* ***associated with a [G SUITE] Account*** *to target ads, whether in Core Services or other Google services while using a[ G SUITE] account.*

(emphasis added). These terms remain substantively operative in the Privacy Notice's current version.

69.     Since the G SUITE Privacy Notice's 2016 update, the G SUITE Agreement affirmatively states, "The [G SUITE] Privacy Notice governs how Google collects and uses information from Customer or End Users."

70.     Despite Google's express assurances in the G SUITE Agreement, the DPA, and G SUITE Privacy Notice, Google collects student personal information and data from (1) the G SUITE account created by the School, student log-in, and use of the Core Services; (2) the students' use of the Additional Services; and (3) the student's other on-line activities; and Google uses this data for purposes beyond providing the G SUITE Services—namely, for non-educational purposes, for profiling of students, for commercial purposes, and for advertising purposes.

c.      **The K-12 School Service Provider Pledge to Safeguard Student Privacy**

71.     On or about October 7, 2014, the Future of Privacy Forum and the Software & Information Industry Association introduced the K-12 School Service Provider Pledge to Safeguard Student Privacy (the "Student Privacy Pledge" or "Pledge") to protect student privacy regarding the collection, maintenance, and use of students' personal information. The Pledge promises that each K-12 school service provider will safeguard student privacy and it applies to all student personal information and to all student G SUITE user accounts.

72.     Google is a school service provider as defined by the Pledge.

73.     Google signed the Pledge in January of 2015. By doing so, Google affirmed and adopted the Pledge's various commitments and affirmatively represents that it abides by the Pledge's terms. The Pledge's assurances, therefore, are Google's own.

74.     As it relates to G SUITE accounts, Google expressly commits, in pertinent part, to:

- Not collect, maintain, use or share student personal information beyond that needed for authorized educational/school purposes, or as authorized by the parent/student;

- not use or disclose student information collected through an educational/school service (whether personal information or otherwise) for behavioral targeting of advertisements to students;

- not build a personal profile of a student other than for supporting authorized educational/school purposes or as authorized by the parent/student;

- not knowingly retain student personal information beyond the time period required to support the authorized educational/school purposes, or as authorized by the parent/student;

- collect, use, share, and retain student personal information only for purposes for which we were authorized by the educational institution/agency, teacher, or the parent/student; and

- disclose clearly in contracts or privacy policies, including in a manner easy for parents to understand, what types of student personal information we collect, if any, and the purposes for which the information we maintain is used or shared with third parties.

75.     Despite its express commitments, Google knowingly collects, maintains, uses, and shares student personal information for purposes beyond education and without consent from schools, parents, or students—namely, for its own commercial and advertising purposes.

76.     Further, Google does not clearly disclose in the G SUITE Agreement, DPA, G SUITE Privacy Notice, or other incorporated documents and URLs, in a manner easy or even possible for school administrators or parents to understand, what types of student data it collects and the scope of Google's collection and usage. To the contrary, Google's various contracts, policies, documents, and URLs constitute a labyrinth of cross-references, conflicting terms, and contradictory statements.

77.     It would take a truly dedicated expert, much less a school administrator, parent, or K-12 student, to even make the futile effort to untangle Google's web of conflict. In fact, this would include no less than reviewing the G SUITE Agreement, DPA, and G SUITE Privacy Notice; Google's adoption of the Pledge; Google Terms of Service[11]; the Google Privacy Policy; multiple hyperlinks embedded in each; any help or information pages; and even more hyperlinks in the help or information pages.

78.     After trudging through these documents, the expert, much less school administrator, parent, or K-12 student, would have another insurmountable task in reconciling which contract, document, term, or policy takes priority over any others. For example: (1) the G SUITE Agreement states it is governed by any applicable "Order Form," but that the Agreement takes precedence over any term located at any URL; (2) the Google Terms of Service states that,

---

[11] While Google claims to incorporate the Google Terms of Service and Google Privacy Policy, nowhere does Google obtain any acceptance of these terms by parents or schools beyond the schools to consent for educational purposes. Further, while Google claims to incorporate the Google Terms of Service and Google Privacy Policy, its own testimony indicates that these are not part of the applicable agreements for G SUITE.

if there is a conflict between its terms and "additional terms," the additional terms will control

for that conflict; and (3) the G SUITE Privacy Notice states that "the G Suite for Education

Agreement (as amended) takes precedence, followed by this Privacy Policy and then the Google

Privacy Policy." So the dedicated expert, much less school administrator, parent, or student, must

also:

- obtain any applicable "Order Form" because Google does not make it readily available;

- unravel the meaning of "any URL" within the G SUITE Agreement because Google's use of the term "any URL" does not comport with the definition of "URL Terms" in the G SUITE Agreement, which Google defines with *even more* cross-referencing, as merely the Acceptable Use Policy, the Google Compute Engine Service Level Agreement ("SLA"), and the Google Technical Support Services ("TSS") Guidelines limits;

- determine whether the Pledge, G SUITE Agreement, DPA, or G SUITE Privacy Notice amount to an "additional term" as stated in the Terms of Service—thus taking priority over the Terms of Service—because these documents are not labeled or identified as additional terms to the Google Terms of Service; and

- determine when certain agreements, documents, policies, or terms apply or cease to apply.

79.     Nonetheless, the G SUITE Agreement and DPA constitute Google's agreement

with Mississippi schools and state that the Agreement takes precedence over other terms.

Likewise, the G SUITE Agreement states that it will comply with the G SUITE Privacy Notice,

which in turn echoes that the G SUITE Agreement and DPA, then the Privacy Notice take

precedence over other terms. In each, Google affirmatively (and deceptively) states that Google

does *not* use students' personal information and activity logs that are associated with their G

SUITE accounts for its own commercial and advertising purposes.

  d.     **Google omitted and still omits material information regarding its collection, processing, use, storage, retention, and association of Mississippi student data.**

80.     Still absent from Google's statements are material disclosures of how it collects, retains, stores, uses, tracks, and associates student data with GAIA and the multitude of improper uses of the data, including its sharing with third parties. Likewise, Google still fails to disclose that it collects, retains, tracks, and associates Mississippi student online activities from non-Google websites.

**3.      Google mispresents the extent of Mississippi Schools' and Parents' access to student account information.**

81.     In numerous statements, Google assures Mississippi schools and parents that they have access to the information Google collects on Mississippi K-12 Students. In the G SUITE Agreements with Mississippi schools, Google has consistently contracted that the schools and the school G SUITE administrators will have access to the data in student accounts and that Google is merely a "data-processor." Further, Google expressly states, "The parents of G Suite for Education users in Primary/Secondary (K-12) schools can access *their child's personal information* or request that it be deleted through the school administrator." These statements are false and deceptive.

82.     As alleged herein, Google associates information it collects from students' on-line activities (G SUITE, other Google services, non-Google services) with those users' individual G SUITE accounts through their GAIA IDs. When Google associates the information tagged with students' GAIA IDs to their accounts, Google treats the information as "personal information" of the student's G SUITE account. However, Mississippi schools and parents are not told of or given full access to the various "personal information" gathered, used, and profiled by Google about Mississippi children and are never informed about Google's use of persistent identifiers such as GAIA ID.

**4.      Google also misrepresented(s) its scanning and use of student email data.**

83. Prior to April of 2014, through its "free" Gmail service, Google scanned, read, processed, extracted, analyzed, acquired, and used the content and meaning of students' email messages for the purpose of displaying targeted advertising within Gmail and across Google's products and services. Through this ad-related scanning/processing or data mining, Google accessed, obtained, and understood the actual meaning and context of keywords and phrases within email messages. Within G SUITE, however, the contractual default setting between the customer school and Google is one that prohibits Google from serving advertisements or using Customer Data, "including email," for purposes beyond those set out in the Agreements—including Google's own commercial or advertising purposes. Google nevertheless data mined(es) Mississippi students' email content without regard to this contractual prohibition.

84. As noted above, all versions of the G SUITE Agreement and initial version of the DPA define students' "Customer Data" as data, "*including email,* provided, generated transmitted or displayed" via G SUITE Core Services. Likewise, subsequent DPA versions defined student "Customer Data" as "data (which may include personal data and the categories of data referred to in Appendix 1) submitted, stored, sent, or received" via the G SUITE Core Services. Appendix 1 specifically includes email.

85. Thus, all contractual promises, policy statements, and other commitments discussed above are fully applicable to the content of emails student G SUITE users send or receive via Gmail.

86. In relevant versions of the G SUITE Agreement, Google also:

- promises to "protect against *unauthorized access to or use of Customer Data*";

- disclaims any rights, implied or otherwise, in "Customer Data" as defined above; and

- agrees that it does not obtain any rights, implied or otherwise, to the content or intellectual property in email messages.

29

Despite these contractual prohibitions, Google both (1) exercises control over and uses Mississippi students' user data as if it was its own; and (2) creates derived data or information from the students' private email content for its own benefit and commercial use.

87.     Further during this period, the Gmail Legal Notice expressly limited Google from using end user email content and data for any purposes *except to provide the service.* Because advertising and use of student data for commercial or advertising purposes is prohibited in G SUITE, Google's ad-related scanning, processing, or data mining is not the provision of Gmail and violates the G SUITE agreements and Gmail Legal Notice.

88.     Reinforcing its contractual obligations, Google falsely marketed G SUITE through documents and information such as the 2010 Google Apps for Education White Paper titled "Moving your university to the cloud – and bringing faculty with you." Therein, Google guarantees that,

> [s]ince Google Apps for Education is completely ad-free, *your school's content isn't processed by Google's advertising systems*. Automated content scanning (with no human involvement) makes Apps work better for users by providing spam-filtering, anti-virus protection and malware protection; and also enables unique functionality like powerful search in Gmail and Google Docs.

(emphasis added). Google also proclaims that "the Privacy Policy explicitly guarantees that we will not inappropriately share *or use* personal information within Google Apps." (emphasis added). "*Your content belongs to your school, or the individual users* at your school and the Google Apps Terms of Service contractually ensures that your institution (or students, faculty, and staff) is the sole owner of this data." (emphasis added). Contrary to its marketing and in furtherance of its unfair and deceptive scheme, Google: (1) processes end user email content through its advertising systems; (2) exceeds the scope of automated content scanning; (3) manifests control and ownership over user data; (4) creates derived data for its own use; and (5) violates its privacy policies and terms of service.

30

89.     Google's unfair and deceptive scheme also contradicts its G SUITE help and support web page, titled "What kind of scanning/indexing of user data is done?" There, Google explains:

> Email is scanned so we can display contextually relevant advertising in some circumstances. (*Note that there is no ad-related scanning or processing in [G SUITE] or Business with ads disabled*).

> In other words, *we only scan or index user content in [G SUITE] in order to provide features that will directly benefit users, or to help us maintain the safety and security of our systems.*

(emphasis added).

90.     The G SUITE help and support page titled "Security & Privacy" declares:

> No advertising to students, faculty, or staff

> We offer Google Apps for Education to schools for free. It's also completely ad-free—*which means your school's content is not processed by Google advertising systems*.

(emphasis added). On the same page, Google also declares, "*We don't look at your content*."

(emphasis added).

91.     Another G SUITE help and support page titled "Security & Privacy" reiterates Google's agreement to limit its data processing in G SUITE:

> Email is scanned so we can display contextually relevant advertising in some circumstances. (*Note that there is no ad-related scanning or processing in Google Apps for Education or Business with ads disabled*).

> In other words, *we only scan or index user content in Google Apps in order to provide features that will directly benefit users, or to help us maintain the safety and security of our systems*.

(emphasis added).

92.     By October of 2013 and as a result of litigation involving Google's scheme, Google removed from its web pages the statement, "Note that there is no ad-related scanning or processing in Google Apps for Education or Business with ads disabled."

93.     As previously alleged, on March 13, 2014, Google publicly confirmed that the emails of all G SUITE end users were in fact scanned, processed, and data-mined for potential advertising via Google's automated processes that could not be turned off—even for G SUITE customers who elected not to receive ads. On April 30, 2014, Google announced that it would permanently remove all ad scanning in Gmail for G SUITE. Google further explained that it would no longer collect or use student data in G SUITE services for advertising purposes. But on information and belief, Google continues to data-mine the email content of Mississippi's students and uses the collected data beyond solely for the provision of the Gmail service, and Google retains the data collected before April of 2014.

94.     Throughout all times during the pendency of Google's unfair and deceptive scheme, and on information and belief, Google to this day: (a) performs ad-related scanning, processing, or data mining of end user email messages; and (b) collects and uses end user email content and data for purposes other than to provide the enumerated services that directly benefit end users, including its own commercial and advertising purposes.

**C.     Google and YouTube violate COPPA in the operation of the G SUITE service, and Google deceptively markets G SUITE, Chromebooks, and other Google Products as COPPA compliant.**

95.     As part of its overarching scheme to portray itself as protecting privacy—but at the same time unlawfully collect, maintain, use, and store Mississippi student data—Google deceptively asserts that it complies with the Children's Online Privacy Protection Act of 1998 ("COPPA"). Google, without limitation, guarantees:

- "G Suite for Education and Chromebooks support compliance with rigorous standards[,]" including "COPPA (Children's Online Privacy Protection Act of 1998)";[12]

---

[12] *Privacy & Security Center*, Google for Education, *available at* https://edu.google.com/why-google/privacy-security/?modal_active=none (last visited Oct. 22, 2019).

- "Schools can use G Suite core services in compliance with COPPA and FERPA" (Family Educational Rights and Privacy Act);[13]

- "Chromebooks adhere to the Student Privacy Pledge so that schools can use these in compliance with COPPA and FERPA";[14] and

- "Best-in-class security and data protection. . . . Chromebooks are designed with multiple layers of security to keep them safe from viruses and malware. We ensure they comply with the Student Privacy Pledge so that schools can use them in compliance with COPPA and FERPA."[15]

96.     Google consistently identifies "G Suite for Education users" in association with "access to other Google services;" "[G SUITE users] in Additional services;" "[K-12 G SUITE users in primary and secondary schools" as being in "Core Services or other Google services accessed while using G Suite for Education account."[16]

97.     Because Google collects the personal information from Mississippi K-12 students upon G SUITE account creation (name, age, gender, etc.), and because Google discloses and shares that data between Google and YouTube, both Google and YouTube have actual knowledge of the students' age. Thus, for all children under thirteen (13) who have G SUITE accounts and use **any** Google service, COPPA applies to all of Google's and YouTube's data collection, retention, storage, and use activities.

98.     For all children under thirteen using their G SUITE accounts (a) who use Google's services or (b) who access and use YouTube through their G SUITE accounts, COPPA applies to all of Google's and YouTube's (acting in concert or alone) data collection, retention,

---

[13] Id.

[14] *Chromebooks Privacy and Security,* Google, *available at* http://services.google.com/fh/files/misc/chromebooks_privacy_security.pdf (last visited Oct. 22, 2019).

[15] *Make learning more effective and engaging with Chromebooks,* Google for Education, *available at* https://edu.google.com/products/chromebooks/?modal_active=none (last visited Oct. 22, 2019).

[16] *G Suite for Education Privacy Notice,* supra note 8.

storage, and use activities. COPPA further applies to Google's and YouTube's disclosure of Mississippi student data to third parties and to each other.

99. Google's *affirmative statements* regarding its compliance with COPPA are false and constitute deceptive conduct.

### 1. Google made and maintains deceptive statements regarding COPPA compliance and parental consent.

100. Google's affirmative statements that its conduct complies with COPPA are false because it never obtains parental consent for activities unrelated to educational and/or school purposes. Further, YouTube has no contracts with Mississippi schools regarding G SUITE and use of G SUITE with YouTube's services; nor does it obtain parental consent for its activities.

101. Google undertakes no effort to obtain parental consent for any of its activities, and Google has never attempted to verify that parental consent has been obtained for any of its activities.

102. Mississippi schools and school districts have authority to (1) offer and use Google's services for educational/school purposes or in an educational context; and (2) access, monitor, use, or disclose end user data for educational/school purposes or in an educational context. Likewise, when offering online programs for the benefit of their students, the school system, and/or educational purposes, schools may consent on behalf of parents for third-party website operators to collect and use information. Critically, this consent only applies to information collection and use *in the educational context*. Mississippi schools provide no consent to Google or YouTube for its data collection activities unrelated to the educational context.

103. But before Google or YouTube can rely on schools' authority to consent even for educational purposes, Google and YouTube must:

(1) provide the school with *all the notices required under COPPA*;

(2)     upon request from the school, *provide the school a description of the types of personal information collected*;

(3)     *provide the school an opportunity to review the child's personal information and/or have the information deleted*; and

(4)     provide the school the opportunity to *prevent further use or online collection of child's personal information*.

104.     With just the example of its using GAIA ID to individually associate student data in a persistent manner and profile students with G SUITE accounts, Google and YouTube do not provide the required COPPA notices to schools, they do not provide the schools with a description of all the types of personal information collected, they do not afford the schools an opportunity to review collected data or have it deleted, and they do not allow Mississippi schools to prevent further use or online collection of Mississippi children's data.

105.     Likewise, Google has never attempted to verify parental consent from any Mississippi parent and has no policy in place to do so. YouTube also makes no attempt to verify parental consent from any Mississippi parent when a Mississippi G SUITE account of a child under thirteen (13) accesses YouTube.

106.     Instead of discharging its prerequisites to rely on schools' consent, Google engages in further deceptive conduct by misrepresenting—as a matter of law and fact—that Mississippi schools are somehow solely responsible for Google's COPPA compliance. In the G SUITE Agreements effective from 2007 to 2016, Google stated:

> Customer acknowledges and agrees that it is solely responsible for compliance with [COPPA], including, but not limited to, obtaining parental consent concerning collection of students' personal information used in connection with the provisioning and use of the [G SUITE] Services by the Customer and End Users.

107.     Google then deceptively represents to the public that Google and G SUITE are compliant with COPPA because Google contractually compels *schools* to comply, as if that obtains consent *on behalf of Google*:

35

- "Can G Suite for Education be used in compliance with the Children's Online Privacy Protection Act (COPPA)? Yes. *We contractually require that schools using G Suite for Education get the parental consent required by COPPA. Our services can be used in compliance with COPPA as long as a school has parental consent*."[17]

- "U.S. regulation applicable to the collection of personal information from children under the age of 13. COPPA imposes certain requirements on operators of websites or online services directed to children under 13 years of age, and on operators of other websites or online services that have actual knowledge that they are collecting personal information online from a child under 13 years of age.

   G Suite for Education: *G Suite for Education contractually requires that schools using G Suite meet the parental consent requirements under COPPA*."[18]

(emphasis added). Remarkably, despite its assurances and contractual obligations, Google has never even attempted to verify with any Mississippi schools that parents have provided consent.

108.    Google's statements are false as a matter of fact. The agreements between Google and Mississippi schools—for purposes of COPPA—require Schools to obtain their *own consent* for their own access of student personal information through G SUITE account administration. Neither Google nor YouTube benefit from Mississippi schools obtaining consent for the schools' actions. Nowhere does Google even attempt to comply with COPPA, and nowhere does it require any Mississippi school to obtain COPPA parental consent *on behalf of Google*. YouTube has no contracts with Mississippi schools regarding G SUITE, and it has no rights under Google's contracts with Mississippi schools.

109.    Google's statements are also false as a matter of law. First, Google and YouTube cannot rely on school consent until they provide the requisite notices, disclosures, and opportunities to review and prevent Google's and YouTube's practices. Second, the FTC

---

[17] *Privacy and Security Information,* G Suite for Education (emphasis added), *available at* https://services.google.com/fh/files/misc/gsuite_for_education_privacy_security.pdf (last visited Oct. 22, 2019).
[18] *Standards, regulations & certifications,* Google Cloud (emphasis added), *available at* https://cloud.google.com/security/compliance/coppa/ (last visited Oct. 22, 2019).

explicitly mandates that, if third-party operators like Google and YouTube collect and use student data for commercial purposes (or purposes other than educational), -- or for commercial purposes alongside educational -- then those third-party operators must obtain their own, verifiable parental consent. In other words, unlike when Google uses student data for educational purposes, Google and YouTube cannot *rely on schools* to obtain parental consent when Google and YouTube use such data for commercial purposes. Instead, until Defendants obtain verified parental consent, they cannot use any student's personal information for any non-educational purposes.

110.    Google's and YouTube's COPPA violations are particularly outrageous because they have manufactured a backdoor by which to avoid it. Children under 13 years old (those covered by COPPA) cannot open standard Google accounts, but Google opens G SUITE accounts for children as young as kindergarten age. Thus, the only way Google and YouTube can track children on an *individually identifiable basis*, through use of GAIA ID information, is through the vehicle of services that are purportedly solely for education. Yet those "free" and "educational" services are the very means by which Google and YouTube begin to monetize the private, personal information of children as young as five or six years old. This is obviously a lucrative head-start for Google to begin profiling and targeting children normally free from its invasive activities at least up to the age of 13, but this conduct is deceptive, unlawful, and must stop.

### 2.    Google deceptively retains student data in violation of COPPA.

111.     Google's guarantees of COPPA compliance are also deceptive because Google and YouTube collect and retain student data in violation of COPPA. Titled "Data retention and deletion requirements," 16 C.F.R. § 312.10 states:

> An operator of a Web site or online service shall retain personal information collected online from a child for *only as long as is reasonably necessary to fulfill the purpose for which the information was collected*. The operator must delete such information using reasonable measures to protect against unauthorized access to, or use of, the information in connection with its deletion.

(emphasis added). This two-fold restriction on use and retention has no consent defense or exception. As such, even if a school or parent properly consents to the initial collection and use, Google and YouTube cannot use or retain the data beyond what is reasonably necessary to the purpose for which it collected the information. Yet Google and YouTube use student data collected for one purpose for several other purposes unrelated to the original need. Further, as alleged with the use of GAIA as a persistent identifier and all of the other data collected with which student profiles are built, both Google and YouTube collect personal information from Mississippi students using G SUITE and use or retain the data beyond what is reasonably necessary to the educational purpose for which the information was purportedly collected.

**3. Google conditions students' use of its Core and Additional Services on their disclosure of more personal information than is reasonably necessary to do so.**

112. Google's guarantees of COPPA compliance are also deceptive because Google conditions students' use of Additional Services on their disclosure of more personal information than is reasonably necessary to do so. Titled "Prohibition against conditioning a child's participation on collection of personal information," 16 C.F.R. § 312.7 states:

> An operator is prohibited from conditioning a child's participation in a game, the offering of a prize, or another activity on the child's disclosing more personal information than is reasonably necessary to participate in such activity.

113. Google falsely claims it is COPPA compliant while it uses and/or combines all data of Mississippi students under 13, from one internet service to another, or when they access an Additional Service while using their G SUITE accounts. But Google cannot "condition" any child's use of G SUITE on their disclosure of personal information that Google uses far beyond

necessary for the child to participate in G SUITE or Additional Services. Nonetheless, Google repeatedly claims not only that it can perform such activities, but it deceptively assures schools and parents that it obtains consent to do so.

114. Both Google and YouTube "condition" Mississippi students' G SUITE users' use of (a) Google services and (b) YouTube on their disclosure of personal information that Google and YouTube use for purposes far beyond that necessary for the child to participate in G SUITE, Google's services, and/or YouTube.

115. Google's guarantees of COPPA compliance are false, deceptive, and intentional, and Google uses them to further its overall scheme to deceive Mississippi's schools, parents, and students about its services.

## V. COUNT I: VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT, MISS. CODE ANN. §§ 75-24-1, *et seq.*

116. The State re-alleges and incorporates all prior paragraphs of this Complaint as if stated fully herein.

117. Google is a "person" within the meaning of, and subject to, the MCPA, MISS. CODE ANN. § 75-24-3(a).

118. Google's marketing, implementing, and administering G SUITE accounts; its contractual agreements with G SUITE customers, including prior versions; and its statements, terms, and policies expressed to G SUITE users, including prior versions, amount to conduct of "any trade or commerce," as defined by Mississippi law.

119. As described herein, through Google's false marketing, implementing, and provision of the G SUITE accounts, to include Google's statements and omissions made in relation to its G SUITE Services, Google has in the past and continues to affect commerce

through unfair methods of competition and unfair or deceptive trade practices, as prohibited by the MCPA, MISS. CODE ANN. § 75-24-5.

120.    At all times material to its actions, Google knowingly and willfully violated the MCPA, MISS. CODE ANN. § 75-24-5.

***Google's Unfair Methods of Competition and Deceptive Trade Practices***

121.    Through Google's unfair and deceptive scheme, as described fully in the preceding paragraphs and incorporated herein, Google unfairly and deceptively markets, implements, and provides G SUITE to Mississippi's K-12 schools and their students. In doing so, Google committed and commits acts of unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce in violation of the MCPA, MISS. CODE ANN. § 75-24-5.

122.    As a result of its unfair methods of competition and unfair or deceptive acts, Google obtained, maintained, and maintains agreements with Mississippi's K-12 schools, which then allowed Google to garner an unfair introduction of its products to Mississippi consumers through individual G SUITE user accounts. Upon the opening and using of each G SUITE account, Google's unfair and deceptive acts have allowed it to amass G SUITE user accounts and gain unauthorized access to K-12 student data.

123.    Unbeknownst to Mississippi's G SUITE customer schools and their G SUITE users, Google secretly accesses, reads, takes, acquires, copies, and uses the G SUITE users' personal information, content, and data for its own benefit and financial gain, in contradiction and violation of Google's multiple expressed commitments to schools and G SUITE users.

124.    Unbeknownst to Mississippi's G SUITE users, Google requires schools, students, or those acting on their behalf to agree to (a) terms which do not accurately reflect the rights of

the parties, (b) terms which Google has no right to obtain, and (c) terms which Google is expressly prohibited from obtaining.

125.    Through its scheme, Google affected commerce by engaging in unfair methods of competition and deceptive acts and trade practices in violation of the MCPA, MISS. CODE ANN. § 75-24-5(1).

126.    The MCPA mandates that "[u]fair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." MISS. CODE ANN. § 75-24-5(1). Without limitation, the MCPA defines "unfair methods of competition and unfair or deceptive trade practices or acts" as:

> Representing that goods or services have sponsorship, approval, *characteristics*, ingredients, *uses, benefits*, or quantities *that they do not have* or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

> [r]epresenting that goods or services are of a *particular standard, quality, or grade*, or that goods are of a particular style or model, *if they are of another*; and

> [a]dvertising goods or services with intent not to sell them as advertised.

MISS. CODE ANN. § 75-24-5(2)(e), (g), & (i) (emphasis added).

127.    Through its scheme described herein, Google violated § 75-24-5(1), (2)(e), 2(g), & 2(i).

128.    With the opening of each Mississippi G SUITE user account and/or by requiring G SUITE users to agree to deceptive agreements and other terms, Google committed and continues to commit a separate violation of MISS. CODE ANN. § 75-24-5 with each G SUITE user account.

129.    Google's conduct described herein constitutes multiple, separate, distinct, knowing and willful violations of the MCPA for each G SUITE user account created.

130.    Since 2007, Google's deceptive actions are continuing as to not only the misrepresentations and omissions, but also as unfair methods of competition due to Google's retention and use of Mississippi student data collected from 2007 until the present. Further, Google has used Mississippi student data from the beginning for its own commercial use and advantage by making derived data, products, and services from Mississippi student data. As such, Google's violations are continuing in nature from 2007 to the present. The State seeks injunctive relief to not only halt the deceptive practices and unfair methods of competition alleged herein but to require Google to account to the Court all data collected and retained, all derived data made, the individualized profiles of students created, all services and products which have been commercially enhanced or created by the alleged collected data. From this accounting, the State seeks further injunctive relief by way of the Court (a) enjoining the further use of unlawfully obtained corpus of data from Mississippi students; (b) enjoining the unlawful use of data from Mississippi students; and (c) further ordering the destruction and disgorgement of such data, the derived data, and disgorgement of the value of those unlawful benefits.

131.    Because Google is exploiting some of Mississippi's most vulnerable citizens through its false, misleading, unfair and deceptive statements, omissions, and practices, the Attorney General has determined that Google has used and continues to use methods, acts, and/or practices prohibited by the MCPA, that these proceedings are in the public's interest, and that the imposition of an injunction against Google prohibiting the unfair and deceptive conduct is in the public interest. Pursuant to MISS. CODE ANN. § 75-24-9, the State is seeking the entry of a permanent injunction against Google that includes without limitation:

    a.    Ordering Google to cease its unfair and deceptive conduct;

    b.    Ordering Google to fully disclose (without limitation or conditional language) the extent of Google's collection, processing, storage, and use of data; and

      c.      Ordering Google to clearly state and abide by the limitations established by Google's statements, commitments, guarantees, and agreements with the Mississippi G SUITE customers and G SUITE users.

      d.      Following full disclosure of Defendants' practices, ordering Google to provide parents and Mississippi students the meaningful opportunity to destroy Mississippi student data and all data derived from it.

132.    In addition, Google's violations justify civil penalties of up to $10,000 for each violation of the MCPA from 2007 to the present, *see* MISS. CODE ANN. § 75-24-19(1)(b)), and injunctive relief, *see* MISS. CODE ANN.§ 75-24-9. The opening of each and every G SUITE user and customer account created by Google violates the MCPA and is considered a separate violation pursuant to MISS. CODE ANN. § 75-24-19(1)(b).

## VI.   COUNT II: VIOLATIONS OF COPPA (15 U.S.C. § 6504)

133.    The State re-alleges and incorporates all prior paragraphs of this Complaint as if stated fully herein.

134.    The FTC applies COPPA, 15 U.S.C. § 6501, *et seq.*, through regulations prescribed within 16 C.F.R. § 312.1, *et seq.* The State of Mississippi may, through its Attorney General, bring an action for violation of COPPA and those regulations pursuant to 15 U.S.C. § 6504.

135.    Through its G SUITE service, Google is at all times an "operator" as defined by 16 C.F.R. § 312.2. When a Mississippi G SUITE child under the age of thirteen (13) (hereinafter for this Count "Mississippi G Suite children or child") logs into their G SUITE account and uses Google's products or services, Google collects personal information from Mississippi children for reasons other than for the educational purposes for the G SUITE accounts; Google uses and stores the information for purposes other than for educational purposes; Google stores, maintains, and uses the data for purposes beyond the purpose for which the data was originally collected; and Google unlawfully discloses the child's personal information to third parties.

43

136.     Through Google's G SUITE service, when a Mississippi G SUITE child is logged into a G SUITE account and accesses YouTube, YouTube is an "operator" as defined by 16 C.F.R. § 312.2. Further, acting in concert, Google and YouTube are operators because they collect or maintain Mississippi G SUITE children's data on behalf of each other, or each benefit by allowing the other to collect personal information directly from Mississippi G SUITE children.

137.     Google's G SUITE and YouTube's services are operated for commercial purposes among the several States.

138.     Both Google and YouTube collect, use, and/or disclose "person information" (as defined by 16 C.F.R. § 312.2) from Mississippi G SUITE children. This personal information includes, among other things, children's names; ages; persistent identifiers that permit user recognition over time and across different websites or online services (such as GAIA, IP address, unique device identifier, etc.); geolocation information sufficient to identify street name and name of a city or town; and information concerning the child or the parents of that child that Google and YouTube collect online from the child and combine with an identifier described in this definition (such as GAIA, IP address, unique device identifier, etc.).

139.     Acting alone, in concert with each other, or on behalf of each other, Google's and YouTube's collection, use, and/or disclosure of "person information" from Mississippi G SUITE children violates 16 C.F.R. 312.3 (15 U.S.C. § 6502(a)(1)).

140.     Neither Google nor YouTube obtain any parental consent, much less verifiable consent, for their collection, use, and/or disclosure of "personal information" from Mississippi G SUITE children, in violation of 16 C.F.R. §§ 312.3(b) and 312.4. The State alleges that neither Google nor YouTube make any effort at all to obtain or ensure parental consent for any of their

44

activities of collection, use, and/or disclosure of "person information" from Mississippi G SUITE children.

141.    Acting alone, in concert with each other, or on behalf of each other, neither Google nor YouTube provides notice of what information they collect, how they use the personal information, and how they disclose the information to each other, in violation of 16 C.F.R. § 312.3(a). As but one example, neither inform Mississippi schools, parents, or children (a) that they use GAIA as a persistent identifier to recognize a user over time and across different Web sites or online services; (b) that they use G SUITE children's personal information to build profiles; and/or (c) that they use G SUITE children's personal information for commercial purposes.

142.    Acting alone, in concert with each other, or on behalf of each other, neither Google nor YouTube provide reasonable means for parents to review the personal information collected from Mississippi G SUITE children and to refuse to permit further use or maintenance of that information, in violation of 16 C.F.R. § 312.3(c). For example, neither Google nor YouTube inform or offer parents the ability to view the many uses of GAIA on a Mississippi G SUITE child's account as a persistent identifier that recognize users over time and across different websites or online services; and neither offer parents an opportunity to have that persistent identifier removed for future use.

143.    Anonymous children accessing and using Google's Additional Services or YouTube are treated differently than Mississippi G SUITE children logged in to G SUITE and who access and use Google's Additional Services or YouTube. Acting alone, in concert with each other, or on behalf of each other, Google and YouTube condition Mississippi G SUITE children's activities in Google's Additional Services and/or YouTube on the Mississippi G

45

SUITE child disclosing more personal information than is reasonably necessary to participate in the Google Additional services and/or YouTube activities, in violation of 16 C.F.R. §§ 312.3(d) and 312.7.

144.    Acting alone, in concert with each other, or on behalf of each other, Google and YouTube store, retain, and subsequently use Mississippi G SUITE children's personal information for purposes beyond and for longer than reasonably necessary to fulfill the purpose for which the information was collected in violation of 16 C.F.R. § 312.10.

145.    Prior to filing this Second Amended Complaint, the State provided written notice to the FTC of this action and a copy of the Complaint pursuant to 15 U.S.C. § 6504.

## VII. <u>AD DAMNUM</u>

The State of Mississippi, by and through its Attorney General, respectfully requests the entry of judgment against Google and YouTube, for all the relief requested herein and to which the State may otherwise be entitled, including without limitation:

1.    Entering Judgment in favor of the State against Google and YouTube in a final order;

2.    Enjoining Google and its employees, officers, directors, agents, successors, assignees, merged or acquired predecessors, parent or controlling entities, subsidiaries, and all other persons acting in concert or participation with it, from affecting commerce within the State of Mississippi by engaging in unfair methods of competition and unfair or deceptive trade practices in violation of Mississippi law and ordering temporary, preliminary, or permanent injunction pursuant to MISS. CODE ANN. §§ 75-24-9;

3.    Declaring that each act by Google as described in this Complaint constitutes multiple, separate violations of Mississippi law;

4.    Imposing civil penalties in the amount of $10,000 for each G SUITE account opened in the State of Mississippi, from 2007 to the present, in violation of MISS. CODE ANN. §§ 75-24-1, *et seq.*; and,

5.    Granting the State:

        a.      The cost of investigative and reasonable attorneys' fees, as authorized by MISS. CODE ANN. §§ 75-24-1, *et seq*. and, specifically, § 75-24-19(1)(b);

        b.      Pre-judgment and post-judgment interest; and,

        c.      All other general relief as provided by law and/or as the Court deems appropriate and just.

6.      Enjoining Google and YouTube and their employees, officers, directors, agents, successors, assignees, merged or acquired predecessors, parent or controlling entities, subsidiaries, and all other persons acting in concert or participation with it, from violating 15 U.S.C. § 6502, *et seq.* (16 C.F.R. § 312.1, et seq), and ordering temporary, preliminary, or permanent injunction pursuant to 15 U.S.C. § 6504(a)(1)(A) and (B), and for attorneys fees and costs.

7.      An order for an accounting of the commercial value of (a) the unlawfully obtained corpus of data from Mississippi students; and (b) the unlawful use of data from Mississippi students; and further order for a disgorgement of the data and/or value of those unlawful benefits.

8.      Following full disclosure of Defendants' practices, ordering Google to provide parents and Mississippi students the meaningful opportunity to destroy Mississippi student data and all data derived from it.

        Respectfully,

        **THE STATE OF MISSISSIPPI, ex rel.,**
        **LYNN FITCH, Attorney General for the State of**
        **Mississippi, PLAINTIFF**

        BY:    */s/ John W. Kitchens*
               John W. Kitchens

               Jacqueline H. Ray, MSB #100169
               Ta'Shia Gordon, MSB #101228
               **OFFICE OF THE ATTORNEY GENERAL**
               Post Office Box 220
               Jackson, Mississippi 39205
               Telephone: (601) 968-3680
               Facsimile: (601) 359-2003
               jacra@ago.state.ms.us
               tgord@ago.ms.gov

**Of Counsel:**
F. Jerome Tapley, PHV
Hirlye R. "Ryan" Lutz III, PHV
Brett C. Thompson, PHV

Cory Watson, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
Telephone: (205) 328-2200
jtaply@corywatson.com
rlutz@corywatson.com
bthompson@corywatson.com

John W. Kitchens, MSB #101137
Kitchens Law Firm, P.A.
Post Office Box 799
Crystal Springs, MS 39059
Telephone: (601) 892-3067
Facsimile: (601) 892-3057
jkitchens@kitchenslaw.net

Sean Rommel, PHV
Wyly-Rommel, PLLC
4004 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 334-8646
Facsimile: (903) 334-8645
srommel@wylyrommel.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, John W. Kitchens, one of the attorneys for the plaintiff, do hereby certify that I have electronically filed the foregoing by using the Court's MEC/ECF system on May 14, 2020. I further certify that all parties are represented by attorneys who are registered MEC/ECF users and that service will be accomplished by the MEC/ECF system.

　　*/s/ John W. Kitchens*
John W. Kitchens