**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

| | |
|---|---|
| THE STATE OF MISSISSIPPI,<br>*ex rel*. LYNN FITCH, Attorney General for the State of Mississippi | Civil Action No. 1:19-cv-220-SA-DAS |
| *Plaintiff*, | Hon. Sharion Aycock |
| v. | ORAL ARGUMENT REQUESTED |
| GOOGLE LLC f/d/b/a GOOGLE, INC. and YOUTUBE LLC, | |
| *Defendants*. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    I.      The Services ....................................................................................................... 2

    II.    Procedural History ............................................................................................ 3

          A.     The Original Complaint ......................................................................... 3

          B.     Discovery And The Motion For Partial Summary Judgment ................... 4

          C.     The First Amended Complaint and Google's Removal Petition ............... 5

          D.     Google Moves To Dismiss The FAC ....................................................... 5

          E.     The SAC ................................................................................................ 6

ARGUMENT ................................................................................................................... 6

    III.   THE SAC SHOULD BE STRICKEN ................................................................. 6

    IV.   THE SAC FAILS TO STATE A CLAIM ............................................................ 9

          A.     Legal Standard ...................................................................................... 9

          B.     The SAC's COPPA Claim Fails Because Defendants Follow FTC
                Guidance ............................................................................................. 10

               1.     The FTC Implements And Interprets COPPA ............................. 10

               2.     FTC Regulations Require A "Reasonable Effort" To Obtain
                     Consent ..................................................................................... 11

               3.     FTC Guidance: Reliance On Schools To Provide Or Obtain
                     Consent Is Reasonable ............................................................... 11

                4.     Google Follows FTC Guidance .................................................. 13

                5.     Following FTC Guidance Is Reasonable ..................................... 14

                6.     Google Does Not Impermissibly Retain Data or Require
                     Unnecessary Disclosures of Personal Information In Violation of
                     COPPA ..................................................................................... 15

          C.     YouTube's Reliance on Google To Provide Notice and Obtain Consent Is
                 Consistent with FTC Guidance .............................................................. 15

          D.     The SAC's MCPA Claim Against Google Also Fails .............................. 17

                1.     The Gmail Scanning Theory Is Conclusory and Meritless .......... 17

                2.     Google Does Not Misrepresent or Omit Information About Data 19

                3.     The State's MCPA-Based COPPA Claim Fails to State A Claim
                     And Is Preempted ....................................................................... 24

    CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................9, 15

*Carlos Salazar v. Zapata Cty.*, No. 16-cv-00292 (JAK), 2018 WL 8017042 (S.D.
    Tex. Dec. 6, 2018)...............................................................................................6

*Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) ................................1, 6, 7

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).......................20

*Corr Wireless Commc'ns, L.L.C. v. AT&T, Inc.*, 893 F. Supp. 2d 789 (N.D. Miss.
    2012) (Aycock, J.)...............................................................................................10

*English v. General Electric Co.*, 496 U.S. 72 (1990) .................................................24

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).......................................10, 21, 23

*Furniture & Accessory Retail Grp., Inc. v. Lane Furniture Indus., Inc.*, No. 10-
    CV-213-SA, 2011 WL 2295112 (N.D. Miss. June 8, 2011) (Aycock, J),
    *aff'd*, 477 F. App'x 172 (5th Cir. 2012) (per curiam).......................................21

*Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992)........................24, 25

*Garziano v. Louisiana Log Home Co.*, 569 F. App'x 292 (5th Cir. 2014) (per
    curiam) ...............................................................................................................17

*Google, Inc. v. Hood,* 96 F. Supp. 3d 584 (S.D. Miss. 2015), *rev'd on other
    grounds*, 822 F.3d 212 (5th Cir. 2016) ..............................................................4

*Howard v. ABN AMRO Mortg. Grp., Inc.*, No. 13-cv-543, 2014 WL 1237317
    (S.D. Miss. Mar. 26, 2014) ................................................................................18

*In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201 (5th Cir. 2010)................22

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ....................................................................14

*Lewis v. Texas Juvenile Justice Dep't*, 2017 WL 3404968 (E.D. Tex. July 7,
    2017) ..................................................................................................................22

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646
    (D.S.C. Mar. 31, 2019) ......................................................................................24

*Mays v. Mut. of Omaha Ins. Co.*, No. 1:14-CV-48, 2014 WL 5621811 (N.D. Miss. Nov. 4, 2014) (Aycock, J.)..........................................................................7, 10, 20, 21, 23

*Minniefield v. Dollar Gen. Corp.*, No. 06-CV-87, 2007 WL 9735957 (N.D. Miss. Apr. 16, 2007) ..........................................................................................13, 21

*Murray v. Ford Motor Co.*, 770 F.2d 461 (5th Cir. 1985)..............................................7

*New Mexico ex rel. Balderas v. Tiny Lab Productions*, No. 18-854 MV/JFR, 2020 WL 2065275, at *12 (D.N.M. Apr. 29, 2020) ................................................25

*Plotkin v. IP Axess, Inc.*, 407 F.3d 690 (5th Cir. 2005) ................................................10

*Ramirez v. County of San Bernardino*, 806 F. 3d 1002 (9th Cir. 2015) ........................7

*Shaunfield v. Experian Info. Sols., Inc.*, No. 3:12-CV-4686-M (BH), 2013 WL 12354439 (N.D. Tex. Dec. 20, 2013) ................................................................8

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000)................................9

*Suarez v. GEO Grp., Inc.*, No. 5:15-CV-83, 2015 WL 13121263 (S.D. Tex. May 18, 2015) ............................................................................................................6

*Super. MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, No. 12-CV-113-SA-SAA, 2014 WL 272459 (N.D. Miss. Jan. 24, 2014) (Aycock, J.), *aff'd*, 778 F.3d 502 (5th Cir. 2015)..............................................................................10, 15

*Sutton v. Allstate Ins. Co.*, No. 4:19-CV-74-DMB-JMV, 2020 WL 896748 (N.D. Miss. Feb. 24, 2020) ....................................................................................9

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002)....................................10

*Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377 (5th Cir. 2009)........................................................................................................7

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997)................................................................................................17

*Zetino v. Allstate Texas Lloyd's*, No. 4:10-CV-3905, 2011 WL 5416323 (S.D. Tex. Nov. 7, 2011) ............................................................................................9

**State Cases**

*Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101 (Ga. Ct. App. 2002).......................18

*In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829 (Miss. 2015) ......................................................................................................17

*Lindsey v. Ford Motor Co.*, 271 So. 3d 757 (Miss. Ct. App. 2018) ..............................17

*State ex rel. Fitch v. Yazaki N. Am. Inc.*, —So. 3d—, 2020 WL 2079092 (Miss. Apr. 30, 2020) ...........................................................................................17, 18

**Federal Statutes**

Child Online Privacy Protection Act, 15 U.S.C. § 6501, *et seq.* ........................... *passim*

15 U.S.C. § 6502 ...........................................................................................................11

15 U.S.C. § 6504 ...........................................................................................................15

**State Statutes**

Miss. Code Ann. § 7-5-8(2)(C) .......................................................................................4

Miss. Code Ann. § 75-24-3 ...........................................................................................19

Miss. Code Ann. § 75-24-5 ........................................................................................3, 17

**Regulations**

16 C.F.R. § 312.2 .....................................................................................................11, 16

16 C.F.R. § 312.3 ...........................................................................................................11

16 C.F.R. § 312.7 ...........................................................................................................15

16 C.F.R. § 312.10 .........................................................................................................15

64 Fed. Reg. 22,750, 22,752 (Apr. 27, 1999) ...............................................................16

64 Fed. Reg. 59,888 (Nov. 3, 1999) ...............................................................11, 12, 14

84 Fed. Reg. 35,842, 35,845 (July 25, 2019) ................................................................12

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) .................................................................................................6, 7

Fed. R. Civ. P. 12(b)(6) ...................................................................................................9

Fed. R. Civ. P. 30(b)(5) ...................................................................................................4

Defendants Google LLC ("Google") and YouTube LLC ("YouTube" and, together with Google, "Defendants") respectfully submit this memorandum of law in support of their motion to strike or, in the alternative, to dismiss the Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

G Suite for Education ("GSFE") is a set of educational tools Google makes available for free to schools. GSFE includes products like Google Docs, Gmail, and Classroom, which teachers and students can use to facilitate a collaborative, user-friendly learning experience, even when schools are closed. In addition to these educational tools, GSFE gives schools the option to allow their users to access certain general-audience Google products with their GSFE accounts. Among those Google products is YouTube, a website for viewing and posting videos.

For three years, the State has accused Google of breaking promises it never made about GSFE. Each time Google has sought to have those charges tested, the State has pivoted, filing new complaints to avoid having a court rule on Google's challenges. The Federal Rules of Civil Procedure do not permit this kind of evasion to continue indefinitely. Having already amended its complaint once, the State was required to seek leave of court (or consent) to file a second amended complaint. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006). The State failed to do so. For this reason alone, the Court could appropriately strike the SAC.

Moreover, had the State sought leave, it would have been appropriately denied, because the SAC, like the two before it, does not state a claim. It accuses Google of breaching certain promises that it never made (as we have twice pointed out) and cites *no specific facts* to support its conclusory allegations that Google breached any of the representations it actually made. This comes after three and a half years of litigation. The SAC is not saved either by tacking on a new defendant, YouTube, wholly owned by Google, or by adding a federal claim challenging conduct

that conforms with controlling agency guidance.  To the extent the Court chooses to consider the SAC, it should be dismissed.

## BACKGROUND

### I.    The Services

GSFE serves millions of teachers and students across the country, allowing schools to access professional-grade services at no cost.  To sign up, a school or district enters an agreement with Google (the "GSFE Agreement").  A school administrator then creates GSFE accounts for teachers, students, and others ("users"), which users can access with a username and password.

GSFE includes a suite of productivity and communications services adapted for school use: Gmail, Calendar, Contacts, Chrome Sync, Drive, Docs, Groups, Sheets, Slides, Hangouts Meet/Chat, Vault, and Classroom.  These are called the "Core Services."  Google has, since 2014, committed not to show any advertising in Core Services.  It provides GSFE to K-12 schools for free in the hope that students will grow to like its products.

Google takes student privacy seriously.  It discloses the kinds of data collected by Core Services and how Google uses that data.  *See* Exhibit A (Nov. 17, 2017 GSFE Privacy Notice) at 725.  Google commits—in the GSFE Privacy Notice, the GSFE Agreement, and an optional Data Processing Amendment ("DPA")—to use the data gathered in Core Services only to provide those services.  Google has also signed the K-12 School Service Provider Pledge to Safeguard Student Privacy (the "Pledge")—a set of best practices for school service providers—which applies to Core Services.

In addition to the Core Services, schools may allow users to use their GSFE account to access generally-available Google consumer services, such as Maps and YouTube.  These are called "Additional Services."  The GSFE Agreement requires schools to obtain parental consent

before allowing users under 18 to access Additional Services with their GSFE account.  Exhibit B (September 2018 GSFE Agreement) at 3.

Google discloses that Additional Services are different than Core Services, and that different privacy rules apply:

> [Additional] services are not governed by the … Pledge or the G Suite agreement, so we may use information in these services in ways we would not for G Suite core services.  For example, additional services may serve ads, and Google may use information in these additional services to improve them.

Exhibit C (April 25, 2018 GSFE Privacy & Security Center) at 1326.  Google commits to K-12 users that it will not "use any user personal information (or any information associated with a G Suite for Education Account) to target ads, whether in Core Services or other Google services accessed while using a [GSFE] account."  Ex. A at 726.[1]

## II.      Procedural History

### A.       The Original Complaint

The original Complaint, filed on January 13, 2017, in Lowndes County Chancery Court, accused Google of misrepresenting how it handled GSFE users' data, in violation of the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. § 75-24-5.  It alleged that Google's practices in Additional Services conflicted with the standards it set for Core Services. *E.g.*, Compl. ¶¶ 17, 27, 35, 43.  The Complaint ignored Google's disclosure of the differences between Core and Additional Services and that *different* privacy rules applied to each.

The Complaint was not rooted in public concern or a diligent investigation.  Instead,

---

[1] Targeted ads are "personalized … based on previously collected or historical data to determine or influence ad selection, including a user's previous search queries, activity, visits to sites or apps, demographic information, or location."  Google Ad Manager Help, *Ad Manager & Ad Exchange program policies: Personalized & non-personalized ads*, https://support.google.com/admanager/answer/9005435?hl=en.  Targeted ads do not include ads based on "contextual information" such as "coarse … geo-targeting based on current location."  *Id.*

former Attorney General Jim Hood explained that "[d]uring []our previous litigation against

Google"—in which a federal judge found "significant evidence of bad faith" by the State[2]—

"some lawyers … advised us of … violations that *could have been* occurring by Google."

Exhibit D (Transcript of Jan. 17, 2017 Press Conference ("Tr.")) at 2:8-12 (emphasis added).

Before filing this case, the State sought *no* information from Google to assess the lawyers'

claims. ECF No. 12-9 (States's Admissions, No. 25). The State received *no* consumer

complaints. *Id.* at Nos. 23-24. Instead, former AG Hood said that his office "did some tests."

Tr. 3:23-4:1. The State has refused to produce the "tests" in discovery, and they are not

referenced in a single allegation of the SAC. Despite its professed concerns, the State never

sought preliminary relief and opposed Google's proposal to first adjudicate the legality of its

current practices. ECF No. 10-20 (Google Opp. to State's Motion to Compel). Nonetheless,

former Attorney General Hood commissioned private lawyers to pursue this case on a

contingency fee.[3]

### B. Discovery And The Motion For Partial Summary Judgment

The State pursued extensive document discovery, serving 23 document requests with 20

subparts. It also served six Rule 30(b)(5) notices seeking documents in connection with

corporate custodian depositions, as well as 20 interrogatories with eight subparts. Google has

provided extensive written answers to interrogatories, which it has supplemented six times at the

State's request, and made 20 document productions, including its internal policy governing the

collection and use of GSFE data, and documents detailing how Google collects, stores, and uses

---

[2] *See Google, Inc. v. Hood,* 96 F. Supp. 3d 584, 595 (S.D. Miss. 2015), *rev'd on other grounds*, 822 F.3d 212 (5th Cir. 2016).

[3] *See* Exhibit E (Retention Agreement Between AG Hood and Kitchens Law Firm, P.A.). *But see* Miss. Code Ann. § 7-5-8(2)(C) (contingent fee "shall not be based on penalties … or any amounts attributable to penalties").

- 4 -

data.  The Product Manager for GSFE, a former schoolteacher, sat for a full-day deposition, during which he repeatedly explained that Google does not misuse GSFE data in the various ways theorized by the State.  *See, e.g.*, ECF No. 13-7 (June 13, 2019 Deposition of Zachary Yeskel) 125:16-24, 137, 139:9-140:16.

Google filed a motion for partial summary judgment on July 30, 2019.  ECF No. 12-8. The motion explained that: (1) most of the representations identified in the Complaint were about Core Services; (2) the Complaint did not allege that Google mishandled data from the Core Services; and (3) uncontradicted testimony (buttressed by an affidavit) confirmed that Google's practices in Core Services comply with its representations.  ECF No. 12-9.  Google also submitted a list of 24 undisputed facts.  ECF No. 12-10.  In response, the State did not meet any of these arguments on the merits or even identify a specific fact from Google's list that it disputed.  Instead, the State claimed that additional discovery was needed and advanced new, speculative theories untethered from the Complaint.  Argument was set for December 5, 2019.

###    C.    The First Amended Complaint and Google's Removal Petition

Two days before the hearing on Google's motion, the State filed the First Amended Complaint ("FAC").  It added two theories: (i) that Google "scans" GSFE users' Gmail accounts for advertising purposes, despite promising not to; and (ii) that Google misrepresents that GSFE may be used consistently with the federal Children's Online Privacy Protection Act ("COPPA"). The FAC otherwise repeated the Complaint's conclusory claims.[4]  Google removed this case on December 4, 2019.

###    D.    Google Moves To Dismiss The FAC

In January, the State advised Google that it planned to file a second amended complaint.

---

[4] The FAC's allegations are discussed in detail in Google's first motion to dismiss.  ECF No. 45 at 6-8.

*See* ECF No. 21.  The parties agreed to a series of extensions (and a stay) as the State maintained that a second amended complaint was forthcoming.  At a conference on March 23, 2020, the State reversed course, refusing to consent to further extensions of Google's time to respond to the FAC.  Accordingly, the Court ordered that Google respond to the FAC within 30 days.  ECF No. 41.  On April 23, 2020, Google filed a motion to dismiss the FAC ("Mot").  ECF No. 44.

> ### E.   The SAC

On May 14, 2020—the day before its response to Google's motion was due—the State filed the SAC.  The SAC does little to address the deficiencies set out in Google's motion.  Instead, it adds a COPPA claim that replicates the COPPA-based MCPA claim in the FAC.  It also joins YouTube as a defendant in that claim.  The COPPA claim alleges that it is improper for Defendants to enlist schools to provide or obtain parental consent for the Core and Additional Services.  SAC ¶¶ 11-13.  This claim ignores authoritative FTC guidance—highlighted in Google's motion to dismiss the FAC—that endorses relying on schools to provide or obtain consent.  The SAC does not meaningfully change the State's MCPA claim, which continues to rely on three flawed theories: (i) that Google deceptively markets GSFE as compliant with COPPA; (ii) that Google scans GSFE Gmail accounts for ads purposes despite promising not to; and (iii) that Google violates representations made in the policies governing GSFE.

## ARGUMENT

## III.   THE SAC SHOULD BE STRICKEN

"Under Federal Rule of Civil Procedure 15(a), after a party has already amended its complaint once, it may amend again 'only by leave of the court or by written consent of the adverse party[.]'"  *Carroll*, 470 F.3d at 1175 (quoting Fed. R. Civ. P. 15(a)(2)); *Carlos Salazar v. Zapata Cty.*, No. 16-cv-00292 (JAK), 2018 WL 8017042, at *12 (S.D. Tex. Dec. 6, 2018) (plaintiff who had already filed an FAC could not thereafter file an SAC as a matter of course);

- 6 -

*Suarez v. GEO Grp., Inc.*, No. 5:15-CV-83, 2015 WL 13121263, at *1 (S.D. Tex. May 18, 2015) (plaintiffs who amended three times in state court prior to removal were not entitled to amendment as of right in federal court).  The FAC counts as a prior amendment.  *Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985) (following removal, all pleadings filed in state court are treated as if they were filed in the federal court).  The State sought neither consent nor leave of court before filing the SAC.  That failure, standing alone, provides sufficient basis for the Court to strike the SAC.

The State argues in a footnote that it was permitted to amend without the Court's leave or Google's consent because it made its prior amendment "pursuant to Rule 15(a)(2) and by agreement of the previous parties."  SAC n.2.[5]  In the Ninth Circuit, that argument might prevail. *See Ramirez v. County of San Bernardino*, 806 F. 3d 1002 (9th Cir. 2015) (party that amended once with consent may file a SAC as of right).  But the Fifth Circuit has not followed *Ramirez*, which conflicts with the Fifth Circuit's decision in *Carroll* and the plain language of Rule 15. Having already amended once, the State cannot amend as of right.  *Carroll*, 470 F.3d at 1175.

Courts may excuse a failure to seek leave if leave to amend would have been granted. Here, however, the Court could properly deny leave because of the State's undue delay, its failure to correct deficiencies identified in prior motions, the prejudice to Google of an amendment at this late date, and the futility of the SAC, which fails to state a claim.  *See Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (In deciding whether to permit an amended complaint, courts will consider "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of

---

[5] The reference to Rule 15(a)(2) is curious, as the Federal Rules do not apply in state court where the FAC was filed.

amendment.") (citation omitted); *Mays v. Mut. of Omaha Ins. Co.*, No. 1:14-CV-48, 2014 WL 5621811, at *3 (N.D. Miss. Nov. 4, 2014) (Aycock, J.) (denying leave as futile where the proposed amended complaint "fail[ed] to state a claim [...] for which relief could be granted.").

**Undue Delay**.  This litigation has been pending for three and a half years.  The State deposed the GSFE Product Manager over a year ago.  If there were facts supporting a plausible claim, the State ought to know them by now.  The State said it would file a SAC in January of 2020, but then waited until May, forcing Google to file an unnecessary motion to dismiss.

**Repeated Failure To Cure Deficiencies**.  Google identified the central flaws in the State's legal theory under the MCPA—that it ignores the differences between Core and Additional Services and thus accuses Google of breaching promises it never made—in a motion for partial summary judgment in July 2019.  In response, the State filed an amended complaint that *did not fix* that problem, but instead added a COPPA-based MCPA claim as well as a bare contention, on information and belief, about email scanning.  When Google filed a motion to dismiss the FAC that pointed out (i) that the FAC did not fix the problems with the original Complaint, (ii) that the COPPA theory was contrary to controlling FTC guidance, and (iii) that the FAC failed to identify facts supporting the "information and belief" on email scanning, the State filed the SAC.  Like the FAC, the SAC does not fix the problems identified in Google's motion, but instead frames the same flawed COPPA theory under COPPA directly, rather than the MCPA.  But that does nothing to address the issue raised in Google's motion to dismiss: Google's practice is consistent with controlling FTC guidance.

**Prejudice**.  The State has evaded rulings on Google's motions by filing successive pleadings that add new flawed claims rather than fix the old ones.  Google should not have to play whack-a-mole.  The State has had ample time and discovery to identify a factual basis for its

claims, but has not done so. *Shaunfield v. Experian Info. Sols., Inc.*, No. 3:12-CV-4686-M (BH), 2013 WL 12354439, at *6 (N.D. Tex. Dec. 20, 2013) (denying leave where defendant had filed a motion to dismiss); *Zetino v. Allstate Texas Lloyd's*, No. 4:10-CV-3905, 2011 WL 5416323, at *3 (S.D. Tex. Nov. 7, 2011) (same).

**Futility**. In determining whether amendment is futile, courts in the Fifth Circuit apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citation omitted). For the reasons set forth below, the SAC flunks those standards—even though this case has been pending for over three years, the State has conducted significant discovery, and Google's prior motion to dismiss laid out in great detail the flaws in the FAC.

This record perhaps explains why, instead of seeking leave and risking denial, the State decided to rely on out-of-circuit authority suggesting leave was not required. But leave is required under Fifth Circuit law, was not sought, and should not be granted. The SAC should be stricken, and the Court should grant Google's previously filed motion to dismiss the FAC. *Sutton v. Allstate Ins. Co.*, No. 4:19-CV-74-DMB-JMV, 2020 WL 896748, at *1 (N.D. Miss. Feb. 24, 2020) (the filing of an amended complaint does not moot a prior motion to dismiss where "the amended complaint 'on its face' fails to address the alleged defects identified in the motion to dismiss") (citation omitted).

## IV. THE SAC FAILS TO STATE A CLAIM

To the extent the Court considers the SAC, it should dismiss it for failing to state a claim.

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "[T]o overcome the plausibility burden imposed by" *Twombly* and *Iqbal*, a plaintiff must "make factual, not conclusory, allegations[.]" *Super. MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, No. 12-CV-113-SA-SAA, 2014 WL 272459, at *4 (N.D. Miss. Jan. 24, 2014) (Aycock, J.) (granting motion to dismiss), *aff'd*, 778 F.3d 502 (5th Cir. 2015). While courts must accept factual allegations as true, they may consider "'documents incorporated into the complaint by reference[] and matters of which [they] may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citation omitted). Further, "a court need not accept as true any 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Corr Wireless Commc'ns, L.L.C. v. AT&T, Inc.*, 893 F. Supp. 2d 789, 800 (N.D. Miss. 2012) (Aycock, J.) (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Mays*, 2014 WL 5621811, at *2 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## B. The SAC's COPPA Claim Fails Because Defendants Follow FTC Guidance

The SAC's primary COPPA theory is that Defendants violate COPPA by enlisting schools—who know each student's guardian or parents, and routinely obtain consent from them—to provide or obtain parental consent for GSFE, rather than by attempting to obtain it from parents without the school's involvement. The FAC made the same essential claim against Google, alleging that this practice made Google's representation that GSFE could be used consistent with COPPA misleading in violation of the MCPA. Google's motion to dismiss pointed out the central flaw in this theory: Google's practice of enlisting schools as agents or intermediaries to provide or obtain consent complies with controlling guidance issued by the FTC—the agency Congress charged with interpreting and implementing COPPA. The SAC does not address this central problem.

### 1. The FTC Implements And Interprets COPPA

COPPA authorizes the FTC to adopt regulations requiring covered operators of online

services to provide notice to, and obtain consent from, parents before collecting data from children 13 and under. *See* 15 U.S.C. § 6502(b)(1)(A). COPPA makes it unlawful to breach those regulations. *Id.* § 6502(a)(1). The FTC adopted regulations (the "COPPA Rule") on parental consent in 1999. *See* 16 C.F.R. § 312.3; Children's Online Privacy Protection Rule, 64 Fed. Reg. 59,888 (Nov. 3, 1999). To help industry meet its requirements, the FTC has published interpretive guidance on the COPPA Rule.

### 2. FTC Regulations Require A "Reasonable Effort" To Obtain Consent

The COPPA Rule requires covered operators to obtain "verifiable" parental consent and defines "[o]btaining verifiable consent" to mean "*making any reasonable effort*" to provide notice and obtain consent. 16 C.F.R. § 312.2 (emphasis added). These words create a broad, flexible standard. Compliance does not require obtaining or verifying consent in every case, but instead "making" an appropriate "effort" to do so. That effort can be "any reasonable" one.

### 3. FTC Guidance: Reliance On Schools To Provide Or Obtain Consent Is Reasonable

Interpreting its "reasonable effort" standard, the FTC has repeatedly said that operators may rely on schools to provide or obtain consent. The Statement of Basis and Purpose for the COPPA Rule ("Preamble") squarely states: "the Rule does not preclude schools from acting as intermediaries between operators and parents in the notice and consent process, or from serving as the parents' agent in the process." 64 Fed. Reg. 59,888, 59,903 (Nov. 3, 1999); *id.* at 59,909. The FTC also directed that "where an operator is authorized by a school to collect personal information from children …, *the operator can presume that the school's authorization is based on the school's having obtained the parent's consent*." *Id.* at 59,903 (emphasis added). The FTC thus expected that "the Rule should not hinder businesses that provide services to schools." *Id.* at 59,909.

- 11 -

The FTC reaffirmed this position in subsequent guidance that explained when schools may act as "agents" and provide the actual consent, as opposed to an "intermediary" obtaining the consent from parents. The FTC elaborated:

> Many school districts contract with third-party website operators to offer online programs solely for the benefit of their students and for the school systems. … In these cases, *the schools may act as the parent's agent and can consent to the collection of kids' information on the parent's behalf.*

Exhibit F (Fed. Trade Comm'n, Complying with COPPA: Frequently Asked Questions, Mar. 20, 2015) at 33 (emphasis added). In this "educational context," the "operator collects information from students for the use and benefit of the school, and for no other commercial purpose." *Id.* Outside of this purely educational context, schools may "act[] as intermediaries between operators and parents in the notice and consent process." Preamble, 64 Fed. Reg. at 59,903.

The FTC has recently reaffirmed this approach. In a July 2019 request for public comment, the FTC quoted the language from the Preamble above with approval, restating that "the Rule 'does not preclude schools from acting as intermediaries between operators and schools in the notice and consent process, or from serving as the parents' agent in the process.'" 84 Fed. Reg. 35,842, 35,845 (July 25, 2019) (quoting 64 Fed. Reg. at 59,903). It sought comment on whether it should go *further* and create a "specific exception to parental consent for the use of education technology used in the schools." *Id.* Still more recently, in guidance responding to the COVID-19 pandemic, the FTC "[s]tress[ed] that COPPA is not a barrier to schools providing robust remote learning opportunities through ed tech services" and affirmed its prior guidance. Exhibit G (L. Schifferle, *COPPA Guidance for Ed Tech Companies and Schools during the Coronaviru*s, Fed. Trade Comm'n, Apr. 4, 2020) at 1.

The FTC's guidance is sensible. Schools already obtain parental consent for many purposes, from field trips to football. *See, e.g.*, Preamble, 64 Fed. Reg. at 59,903 ("[M]any

schools already seek parental consent for in-school Internet access at the beginning of the school year."). Indeed, as experts have recognized, schools have advantages over technology companies in obtaining consent because of their ongoing relationships with parents.[6]

### 4. Google Follows FTC Guidance

Taking the SAC's allegations as true, Defendants follow this FTC guidance. *First*, Core Services have been adapted for use within school. The GSFE Privacy Notice states: "User personal information collected in the Core Services is used only to provide the Core Services." Ex. A at 725. This data is thus "used for a school-authorized educational purpose and for no other commercial purpose." *See* Ex. G at 1. In this context, the FTC allows schools to "act as the parent's agent and []consent." Ex. F at 33. The GSFE Agreement accordingly provides that schools granting accounts to students under age 13 "consent[] as required under [COPPA] to the collection and use of personal information in the Services, described in the G Suite for Education Privacy Notice, from such End Users." Ex. B at 3.[7]

*Second*, Additional Services are general consumer services that can be accessed with a GSFE account if the school authorizes access. Unlike in Core Services, data collected in Additional Services is not used solely to provide the Additional Services. The Privacy Notice explains that Additional Services data is used for a variety of purposes described in Google's Privacy Policy, including to develop new Google services. Ex. A at 725. Google does *not* rely

---

[6] For example, at a 2010 FTC roundtable, agency staff asked a panel about mechanisms for obtaining consent. One privacy advocate responded: "The real problem here has always been … you don't know if you have the custodial parent …, and the only people who know that, …, are schools." Fed. Trade Comm'n, COPPA Rule Review Roundtables, June 2, 2010, at 259:14-260:14.

[7] The State alleges that Google fails to provide notice of its privacy practices and thus cannot rely on consent from schools for Core Services. SAC ¶¶ 103-04. But that ignores the plain language of the GSFE Privacy Notice, which provides the required information, *see* Ex. A, and which the Court may properly consider on this motion, since it is referenced multiple times in the SAC and is central to the State's claims. SAC ¶¶ 54, 57, 67-70. *See Minniefield v. Dollar Gen. Corp.*, No. 06-CV-87, 2007 WL 9735957, at *1 (N.D. Miss. Apr. 16, 2007) (considering policy and procedure documents where "central allegation" was that defendant's conduct was "contrary to said policies and procedures"), *report & recommendation adopted*, 2007 WL 9735958 (N.D. Miss. May 15, 2007).

on schools to provide consent for Additional Services as the parents' agent. Instead, consistent with FTC guidance, Google engages schools as intermediaries to obtain parental consent.[8]

In the GSFE Agreement, schools agree to "obtain parental consent for the collection and use of personal information" in the Additional Services "before allowing any End Users under the age of 18 to use those services." Ex. B at 3. Schools provide Google with an express warranty that they have done so. *Id*. Consistent with FTC guidance, Google presumes that schools authorizing access to Additional Services have complied with their contractual promise and warranty and obtained the requisite parental consent. *See* Preamble, 64 Fed. Reg. at 59,903 ("[T]he operator can presume that the school's authorization is based on the school's having obtained the parent's consent.") The SAC does *not* allege that even a single Mississippi school failed to fulfill its contractual duty to obtain parental consent for the Additional Services.[9]

### 5. Following FTC Guidance Is Reasonable

The State alleges that Defendants may not reasonably rely on schools to provide or obtain parental consent, either as an agent or an intermediary, for the Core Services and Additional Services. But that is the very thing FTC guidance endorses. And that guidance is not *ad hoc*: it was published formally, reflects the FTC's "substantive expertise," and represents the FTC's "fair and considered judgment." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019). Doing what the agency charged with implementing a statute advises you to do is, as a matter of law, reasonable.

Indeed, imposing liability for conduct aligned with FTC guidance would "create[] unfair surprise," *Kisor*, 139 S. Ct. at 2418, "impose[] retroactive liability," *id*., and—most perilously—

---

[8] Google also provides schools with tools and resources to facilitate their obtaining parental consent. *See* Google G Suite Admin Help, *Communicating with Parents and Guardians about G Suite for Education,* https://support.google.com/a/answer/6356509?hl=en.

[9] In discovery, the State admitted that it is not aware of any school that breached its contractual obligation to obtain consent. ECF No. 12-9 (State's Response to Interrogatory 10).

throw into chaos the legal arrangements between tens of thousands of schools and companies like Defendants, at a moment when technology-facilitated remote learning is more vital than ever. While Congress gave the states authority to bring COPPA enforcement actions, *see* 15 U.S.C. § 6504(a), it expressly denied them authority to "impose any liability … in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section," *id.* § 6502(d). The State cannot proceed against Defendants on COPPA theories that run directly contrary to FTC guidance.

### 6. Google Does Not Impermissibly Retain Data or Require Unnecessary Disclosures of Personal Information In Violation of COPPA

Finally, the SAC alleges two additional COPPA violations. These theories also track the COPPA-based MCPA claims in the FAC but, again, fail to correct the flaws in those allegations. *First*, the State alleges that Defendants "collect and retain student data" for an unreasonable period of time. SAC ¶ 111 (citing 16 C.F.R. § 312.10). As in the FAC, this threadbare paragraph contains no non-conclusory factual allegations. *Second*, the State alleges that Defendants "condition" students' use of Additional Services, "on their disclosure of more personal information than is reasonably necessary to do so" and misleadingly claims to obtain parental consent for this disclosure. *Id.* ¶¶ 112-14. As discussed above, Google's consent practices comply with FTC guidance. And as in the FAC, the remainder of this conclusory allegation simply restates the legal standard, *see* 16 C.F.R. § 312.7, without pleading any facts to support it. As Google noted in the prior motion to dismiss, these "naked assertion[s] … without some further factual enhancement" are facially insufficient and must be dismissed. *Twombly*, 550 U.S. at 570; *Super. MRI Servs., Inc.*, 2014 WL 272459, at *4.

### C. YouTube's Reliance on Google To Provide Notice and Obtain Consent Is Consistent with FTC Guidance

The SAC adds YouTube as a Defendant in the COPPA claim and seems to suggest that

YouTube cannot rely on Google's reasonable efforts to obtain parental consent but was instead required to make separate efforts to obtain the same consent. *See, e.g.*, SAC ¶ 108 ("YouTube has no contracts with Mississippi schools regarding G SUITE, and it has no rights under Google's contracts with Mississippi schools.") That is wrong and once again contradicted by controlling FTC guidance.

YouTube is a wholly owned subsidiary of Google. Both Google and YouTube collect and use information received by the YouTube website, including from users whose school has authorized them to access YouTube with their GSFE account. Both Google and YouTube are "operators" of the YouTube website under the COPPA Rule. *See* 16 C.F.R. § 312.2 (defining "operator"). In such a circumstance, "both parties will have joint responsibility to provide the protections required by the [COPPA Rule]." 64 Fed. Reg. 22,750, 22,752 (Apr. 27, 1999). The FTC provides that "[i]n circumstances of joint responsibility, the parties may make arrangements between them to facilitate implementation of their responsibilities. For example, it may be more efficient for [one party] to provide parental notice and obtain parental consent…." *Id.*

That is precisely what Google and YouTube do. Google tells schools and end users in its Privacy Notice that they "may have access to other Google services … such as … YouTube", that the Google Privacy Policy "describes fully how Google services" like YouTube "use information," and that "Google may serve ads to [GSFE] users in the Additional Services," including YouTube. Ex. A at 725-26. When a school grants access to Additional Services like YouTube, it is required by the GSFE Agreement to "obtain parental consent for the collection and use of personal information … before allowing any End Users under the age of 18 to use those [additional] services." Ex. B at 3. Google's efforts to provide notice and obtain consent cover YouTube's use and collection of data and satisfy the Defendants' "joint responsibility."

The State's COPPA claim against YouTube fails to state a claim.

### D. The SAC's MCPA Claim Against Google Also Fails

The SAC advances several theories of liability under the MCPA. They all fail. The MCPA "prohibits 'unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce.'" *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015) (quoting Miss. Code Ann. § 75-24-5). A defendant cannot violate the MCPA through statements that are true and not misleading. *See Lindsey v. Ford Motor Co.*, 271 So. 3d 757, 763-64 (Miss. Ct. App. 2018); *Garziano v. Louisiana Log Home Co.*, 569 F. App'x 292, 297-98 (5th Cir. 2014) (per curiam).

As the Mississippi Supreme Court recently explained, the MCPA is not designed "to punish past violations." *State ex rel. Fitch v. Yazaki N. Am. Inc.*, —So. 3d—, 2020 WL 2079092, at *4 (Miss. Apr. 30, 2020). To state a claim under the MCPA, the State must "allege[] facts that support a reasonable inference of *present or future* illegal conduct that needs to be enjoined." *Id.* at *5 (emphasis in original); *see also id.* at *6 (denying relief where alleged trade practice was "'too remote' to support a claim that injunctive relief is needed").

#### 1. The Gmail Scanning Theory Is Conclusory and Meritless

The SAC does not materially alter the State's baseless Gmail scanning theory and fails to respond to the arguments Google advanced in its first motion to dismiss. Mot. at 15-16. The State notes Google's April 2014 commitment that "it would permanently remove all ad scanning in Gmail" for GSFE users. SAC ¶ 41. The SAC recites that "[t]he State seeks to confirm" that Google ceased scanning and also advances an alternative theory—based on nothing more than "information and belief"—that Google is violating this commitment. *Id.* ¶¶ 42; 92-94. The State cannot state a claim based on speculation alone, pleading no specific facts to suggest its theory is plausible. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899,

903 (5th Cir. 1997) ("[W]here allegations are based on information and belief, the complaint must set forth a factual basis for such belief."); *Howard v. ABN AMRO Mortg. Grp., Inc.*, No. 13-cv-543, 2014 WL 1237317, at *3 (S.D. Miss. Mar. 26, 2014) (rejecting "speculative" allegations as "not well taken").

The SAC also alleges that *prior* to April 30, 2014, Google scanned Gmail data, and that this conduct breached the representations Google made prior to April 2014.  This does not state a claim under the MCPA because the alleged misrepresentation occurred more than six years ago. Such stale conduct does not supply the required inference of "*present or future* illegal conduct that needs to be enjoined" and is "too remote in time" to support an MCPA claim.  *Yazaki*, 2020 WL 2079092, at *6 (emphasis in original).

In an effort to avoid *Yazaki*, the SAC alleges that Google "retains the data unlawfully collected prior to April 30, 2014, and continues its use of that data."  SAC ¶ 42.  The SAC does not explain the basis for this conclusory allegation.  Even if assumed true, it does not salvage this claim.  The whole thrust of *Yazaki* is that the MCPA's purpose is to permit courts to enjoin ongoing unfair or deceptive *trade practices*, not to remedy *past* trade practices that have long since ceased.  *See Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002) (denying remedy under Georgia Uniform Deceptive Trade Practices Act for injury occasioned by past trade practice) (cited with approval by the Supreme Court in *Yazaki*).

And the conduct that the SAC alleges continues here—retention and use of data obtained six or more years ago—is not a trade practice at all, and thus cannot be an ongoing "unfair or deceptive" trade practice subject to injunction under the MPCA.  The MCPA defines "trade" as "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever

situated." Miss. Code Ann. § 75-24-3. Simply holding or using data does not constitute advertising, offering or sale, or distribution of anything. Thus, an allegation that Google today holds data it obtained as a result of alleged omissions or misrepresentations that ceased six years ago is not an allegation that Google is engaging *presently* in unlawful or deceptive *trade* that violates the MCPA. The allegation therefore fails to state a claim under the MCPA.

### 2. Google Does Not Misrepresent or Omit Information About Data

#### a. Alleged Misuse of "Student Personal Information"

The SAC alleges that Google collects something called "student personal information" from (1) the process of opening a G Suite account; (2) the students' use of Additional Services; and (3) the student's "other on-line activities" on third-party websites. SAC ¶ 70. The SAC claims that Google uses this information for unspecified "commercial and advertising purposes." *Id.* ¶ 56. The SAC contends this vaguely-described conduct violates representations in the GSFE Agreement, the DPA, and the Pledge. *Id.* ¶¶ 66, 75. There are two fatal problems. *First*, the GSFE Agreement, the DPA, and the Pledge make promises about Core Services, and not about the G Suite account itself, the Additional Services, or third-party websites. Google's motion to dismiss the FAC pointed this out, *see* Mot. 17-20, but the SAC simply repeats the same flawed allegations. *Second*, like the FAC, the SAC still alleges no *facts* showing (or even suggesting) that Google uses any data in ways that violate its representations. Again, the motion to dismiss pointed this out, Mot. 20-21, and the SAC does nothing to address the problem.

#### b. The GSFE Agreement, The DPA, and The Pledge All Make Promises About Core Services

Section 1.4 of the GSFE Agreement represents that Google will not "serve Ads in the Services or use Customer Data for Ads purposes." SAC ¶ 62. Section 7.1 of the GSFE Agreement represents that Google will use Customer Data only to "exercise rights and fulfill

obligations" under the Agreement.  SAC ¶ 48.  "Customer Data" is defined in the GSFE

Agreement as "data … provided, generated, transmitted or displayed via the Services" and the

"Services" are defined as the "G Suite for Education Core Services."  Ex. B at 11-12.  Thus,

Sections 1.4 and 7.1 are representations about how Google will use data "provided, generated,

transmitted, or displayed" via the Core Services.  *See id.*[10]  The SAC claims that this language

somehow extends Google's promise to cover "all student data derived from account creation"

and from "access[ing]" GSFE, SAC ¶ 49, including activity in Additional Services or on third-

party websites.  But that is *not* what Google has promised.  Google's promises in the GSFE

Agreement are explicitly about data "provided, generated, transmitted or displayed" via the Core

Services, not via the GSFE account itself or other Google products.  Ex. B at 11-12 (defining

"Services" as the "Core Services" enumerated in the Services Summary); Google, G Suite

Services Summary, https://gsuite.google.com/intl/en/terms/user_features.html (listing the Core

Services).   Where a contract "is unambiguous, its terms must be given their plain meaning and

enforced as written."  *Mays*, 2014 WL 5621811 at *2 (citation omitted).

   The SAC also points to Sections 5.2 and 5.3 of the DPA.  SAC ¶ 64.  There, Google says

it "will only process Customer Data in accordance with the Instructions, and will not process

Customer Data for any other purpose" and that it "will not process Customer Data for

Advertising purposes or serve Advertising in the Services."  Exhibit H (Dec. 8, 2016 DPA) at

594.  Again, the defined terms in the DPA determine the scope of this representation and the

SAC alleges no facts suggesting that Google acted inconsistent with it.  Customer Data is data

---

[10] The Court can consider the GSFE Agreement because that document is quoted and referenced repeatedly in the
SAC and is central to the State's claims.  SAC ¶¶ 44-57, 62-66; *Mays*, 2014 WL 5621811, at *2 n.3 (considering
documents referenced in the pleadings); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th
Cir. 2000) (affirming dismissal where court considered documents attached to motion to dismiss because
"'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are
referred to in the plaintiff's complaint and central to her claim.'" (alteration in original) (citation omitted)).

"submitted, stored, sent or received via the Services." *Id.* at 593.  As in the GSFE Agreement, "'Services' means … the Core Services for … G Suite for Education". *Id.*[11]  Thus, Google's promises in the DPA are promises about data "submitted, stored, sent or received" via the Core Services, not promises about all data associated with a GSFE account.  Because the plain language of the DPA limits its scope to the Core Services, the SAC's conclusory allegations about misuse of data outside the Core Services do not state a plausible claim to relief.  *See Furniture & Accessory Retail Grp., Inc. v. Lane Furniture Indus., Inc.*, No. 10-CV-213-SA, 2011 WL 2295112, at *3 (N.D. Miss. June 8, 2011) (Aycock, J.) (granting motion to dismiss based on plain text of agreement), *aff'd*, 477 F. App'x 172 (5th Cir. 2012) (per curiam).

Finally, the SAC alleges that Google violates the Pledge by using "student personal information" for "commercial and advertising purposes."  SAC ¶ 75.  But the Pledge, like the GSFE Agreement and DPA, is not a promise about all Google services.  As Google discloses, Ex. C at 1326, "services outside of the G Suite core services … are not governed by the Student Privacy Pledge."[12]

c.     **The Allegations About Misuse of Data Are Conclusory**

The SAC recites repeatedly that Google uses student personal data for "commercial and advertising purposes."  But here, too, the State has not responded to the deficiencies noted in Google's first motion to dismiss.  Mot. 20-21.  As explained there and above, Google's agreements and representations do *not* preclude it from using certain data (*e.g.*, from general consumer services like YouTube) for commercial and advertising purposes, so long as data

---

[11] Because the DPA is repeatedly cited in the FAC and is central to its claims, SAC ¶¶ 44-57, 62-66, it is properly considered.  *See Mays*, 2014 WL 5621811, at *2 n.3; *Minniefield*, 2007 WL 9735957, at *1.

[12] The SAC quotes from and contains a hyperlink to the GSFE Privacy and Security Center, which contains these FAQs, SAC ¶ 95 n.12, and this document is thus incorporated by reference into the SAC and may be considered on a motion to dismiss, *Funk*, 631 F.3d at 783.

associated with a K-12 GSFE account is not used to target advertising. Except for the inadequate Gmail scanning theory addressed above, the SAC *still* does not allege that Google uses data from Core Services for commercial or advertising purposes or that Google uses data associated with K-12 GSFE accounts to target advertising.

The SAC does not cure the State's failure to allege specific facts supporting the conclusory claim that Google misuses student personal information. The Court should not accept as true conclusory allegations of wrongdoing, particularly years into a litigation and in light of the State's opportunity to amend its pleadings after reviewing Google's motion to dismiss. *See Lewis v. Texas Juvenile Justice Dep't*, 2017 WL 3404968, at *7 (E.D. Tex. July 7, 2017) (dismissing amended pleading that failed to cure deficiencies identified in first motion to dismiss); *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010).

### d.  Alleged Omissions

The SAC alleges generically that Google fails to disclose that it used data collected from students for Google's own "commercial and advertising purposes." SAC ¶¶ 51, 60. This allegation fails for the reasons explained above and in Google's prior motion: Google only uses data collected from Core Services for permitted purposes (i.e., to provide the Services) and (save for the Gmail scanning theory refuted above), the SAC *still* does not allege otherwise. Mot. 21. Outside of Core Services, this allegation fails because it depends on conclusory allegations of misconduct and because it ignores Google's many disclosures advising users that Google uses data gathered from outside of Core Services for commercial purposes.

*First,* the GSFE Privacy Notice discloses that GSFE users "may have access to other Google services that we make generally available for consumers," which "may serve ads." Ex. A at 725-26. The GSFE Privacy Notice then says: "[W]e use the information we collect from all our services to provide, maintain, protect and improve them, to develop new ones, and to protect

Google and our users.  We also use this information to offer users tailored content, such as more relevant search results."  *Id.*  For additional detail, the GSFE Privacy Notice links to the Google Privacy Policy, which explains that Google uses data to "deliver [its] services," "ensure [its] services are working as intended," to "make improvements to [its] services," "to help [it] develop new" services, to "help advertisers understand the performance of their ad campaigns" and to "customize [its] services for" the user, "including [by] providing recommendations, personalized content, and customized search results."  Exhibit J (Oct. 15, 2019 Privacy Policy) at 6-7.[13]  Google noted these disclosures in its motion to dismiss the FAC.  The State responded not by acknowledging these disclosures and attempting to explain why they are insufficient, but by deleting the hyperlink to the Privacy Policy that appeared in the FAC.  *Compare* FAC ¶ 60 n.8 *with* SAC ¶ 68.  The State cannot avoid review of its omission claim by deleting references to the document that proves it is false.

*Second*, Google publishes Frequently Asked Questions about GSFE that are readily available and that explain, in easy-to-understand language, that "there are additional services outside the G Suite core services" which "may serve ads" and are "not governed by the Student Privacy Pledge or the G Suite agreement."  Ex. C at 1326. The FAQs explain that Google "may use information" from Additional Services "in ways [it] would not for G Suite core services" (including "to improve" the Additional Services), and direct the reader to "review the … Google Privacy Policy" to learn more about how Google collects and uses data from Additional Services.  *Id.*  Google's motion to dismiss the FAC noted this as well, *see* Mot. 22, but the State

---

[13] The Google Privacy Policy is referenced in the SAC, SAC ¶¶ 68, 77, 78, and the Court may consider it, *Mays*, 2014 WL 5621811, at *2 n.3.  It is also a publicly-available document that speaks directly to the facts in issue in the FAC.  The Privacy Policy is thus a matter of which the Court may take judicial notice and consider in deciding this motion.  *See Funk*, 631 F.3d at 783 (affirming use of judicial notice of "publicly-available documents and transcripts …, which were matters of public record directly relevant to the issue at hand").

did not amend its allegations to respond.

In light of these disclosures, the allegation that Google fails to disclose that it may use data from outside the Core Services for commercial or advertising purposes is flatly untrue, is refuted by documents that may be considered on a motion to dismiss, and fails to state a claim.

### 3. The State's MCPA-Based COPPA Claim Fails to State A Claim And Is Preempted

Finally, the State's MCPA claim against Google based on alleged COPPA violations, *see* SAC ¶¶ 95-115, fails for two reasons. One, the State has not pled any COPPA violation. *See supra* pp. 10-17. Two, the state-law claim is preempted. "Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. General Electric Co.*, 496 U.S. 72, 78-79 (1990) (citation omitted). COPPA provides that "[n]o State … government may impose any liability … in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section." 15 U.S.C. § 6502(d). Congress's intent is clear: states may not impose additional (i.e., inconsistent) liability for perceived COPPA violations through state statutes. *See Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019) (COPPA preemption barred claims "predicated on alleged violations of COPPA rather than on additional activity that violates state law.").[14]

### CONCLUSION

For the forgoing reasons, the Court should strike or, in the alternative, dismiss the SAC.

---

[14] One district court in another circuit held that state law claims imposing additional punishments for conduct alleged to violate COPPA were not pre-empted. *New Mexico ex rel. Balderas v. Tiny Lab Productions*, No. 18-854 MV/JFR, 2020 WL 2065275, at *12 (D.N.M. Apr. 29, 2020). That court's analysis failed to give appropriate weight to Congress's intent to create a carefully balanced regulatory scheme, or to the ways in which permitting additional punishments under state law undermine that balance.

RESPECTFULLY SUBMITTED this 29th day of June, 2020.

|  |  |
|---|---|
| | /s/ Peter G. Neiman |
| FORMAN WATKINS & KRUTZ LLP | WILMER CUTLER PICKERING HALE AND |
| Fred Krutz (MSB No. 4270) | DORR LLP |
| Daniel J. Mulholland (MSB No. 3643) | Peter G. Neiman (*pro hac vice*) |
| 210 East Capitol Street, Suite 2200 | 7 World Trade Center |
| Jackson, Mississippi 39201-2375 | 250 Greenwich Street |
| Telephone:  (601) 960-8600 | New York, NY  10007 |
| Fax:  (601) 960-8613 | Telephone:  (212) 230-8800 |
| fred.krutz@formanwatkins.com | Facsimile:  (212) 230-8888 |
| daniel.mulholland@formanwatkins.com | peter.neiman@wilmerhale.com |

Blake Roberts (*pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
blake.roberts@wilmerhale.com

*Attorneys for Defendant Google LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I electronically filed the foregoing with the Clerk of the United States

District Court for the Northern District of Mississippi, by using the Court's CM/ECF system on

June 29, 2020. I further certify that all parties are represented by attorneys who are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

THIS the 29th day of June, 2020

_____/s/ Peter G. Neiman_____
Peter G. Neiman