**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

THE STATE OF MISSISSIPPI                                                                                    PLAINTIFF

v.                                                                                          CASE NO. 1:19-CV-220-MPM-DAS

GOOGLE, LLC and
YOUTUBE, LLC                                                                                          DEFENDANTS

**ORDER AND MEMORANDUM OPINION**

On December 4, 2019, the Defendant, Google, LLC, removed this action from the Chancery Court of Lowndes County, premising jurisdiction on the basis of federal question pursuant to 28 U.S.C. § 1331. *See* Notice of Removal [1].[1] On June 29, 2020, the Defendants filed a Motion to Strike or, in the Alternative, to Dismiss [54]. The Motion [54] has been fully briefed, and the Court is prepared to rule.

*Relevant Factual and Procedural Background*

G Suite for Education ("G SUITE") is a web-based service that Google markets to educational institutions. In order to deliver G SUITE to schools for student use, Google contracts with educational institutions, including but not limited to K-12 schools in Mississippi. When customer schools contract with Google to use G SUITE, the school must create an individual G SUITE account for each student. Each student receives a username and password.

In G SUITE, Google collects various pieces of personal information from the students, including their name, email address, telephone number, age, and gender. According to the State of

---

[1] Although YouTube is currently a Defendant in this case, at the time of removal, Google was the only named Defendant.

1

Mississippi, "Google further collects a wide range of student personal information each time a student logs in to his or her G SUITE account. This includes device information, such as the hardware model, operating system, unique device identifiers, and mobile network information; the student's internet protocol (IP) address, GPS, and other location sensors; unique application numbers; and cookies or similar technologies." Second Amended Complaint [48], p. 10. Google utilizes a technology system called "Google Accounts and ID Administration" (hereinafter "GAIA ID") to track this information and associate it with a particular G SUITE account. The State explains GAIA ID as "Google's identification management system [which] is essentially a set of numbers specific to an account that attaches to each piece of collected data from a G SUITE child user's online activity." Second Amended Complaint [48], p. 10.

The services offered by Google can be separated into two parts: (1) "Core Services" and (2) "Additional Services." The "Core Services" include the following twelve applications: Gmail, Calendar, Contacts, Drive, Docs, Forms, Groups, Sheets, Slides, Talk/Hangouts, Vault, and Classroom. "Core Services" are not publicly available, and students may only access and utilize them through the creation of a G SUITE account. "Additional Services" include applications such as Search, YouTube, Maps, Photos, Books, News, Play, and Voice. Unlike the "Core Services," a G SUITE account is not required to access the "Additional Services." However, according to the Second Amended Complaint, "when a student signs into his G SUITE account and accesses an "Additional Service," Google (and YouTube when the student accesses YouTube) collects, processes, and uses the student's GAIA ID to associate that child's data with his personal G SUITE account." [48], p. 12. The State alleges that while neither Google nor YouTube can associate collected data from an individual accessing an "Additional Service" as an unidentified public user,

2

when a child accesses an "Additional Service" through the G SUITE account, Google and YouTube can use GAIA ID to identify the student, track the student's online activity, and store personally identifiable information. According to the State, neither Google nor YouTube complies with the applicable guidance regarding the notice requirements associated with these tracking practices. The State further alleges that the Defendants utilize the tracking information for their own commercial gain.

The instant litigation between the State of Mississippi and Google has been ongoing since January 13, 2017, when the State, by and through the Attorney General, filed its original Complaint against Google in the Chancery Court of Lowndes County, Mississippi. *See Original Complaint* [7], Exh. 2. In its original Complaint, the State alleged that Google engaged in unfair methods of competition and unfair and deceptive trade practices regarding its statements, contractual promises, commitments, and material omissions regarding its collection, usage, processing, and retention of the personal information of Mississippi students. The State alleged that Google's conduct violated the Mississippi Consumer Protection Act ("MCPA"). The State then filed its First Amended Complaint [2] in the Chancery Court action on December 3, 2019. In addition to the original claims and allegations, the First Amended Complaint asserted that Google violated the Children's Online Privacy Protection Act of 1998 ("COPPA"), a federal statute. Google immediately removed the action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Notice of Removal [1]. On April 23, 2020, Google filed a Motion to Dismiss [44], requesting dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Rather than responding to Google's Motion [44], the State filed its Second Amended

3

Complaint [48]. In addition to reasserting its claims for violations of the MCPA and COPPA against Google, the Second Amended Complaint [48] also adds YouTube as a defendant. The State requests that the Court declare the Defendants' conduct unlawful and enjoin the Defendants from engaging in further conduct in violation of the Acts. Additionally, the State requests an accounting of the commercial value of the information received from the Defendants' purportedly unlawful activity and disgorgement of the data and/or its value.

*Analysis and Discussion*

Through the present Motion [54], the Defendants request that the Court strike the Second Amended Complaint or, in the alternative, dismiss the COPPA and the MCPA claims. As to the request that the Second Amended Complaint [48] be stricken, the Defendants assert that the State improperly filed the Second Amended Complaint without requesting leave of Court. Alternatively, the Defendants request that the Court dismiss the Second Amended Complaint [48] for failure to state a claim.

    I.    *Motion to Strike*

The Defendants request that the Second Amended Complaint [48] be stricken pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides as follows:

> **(a) Amendments Before Trial.**
> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
>   (A) 21 days after serving it, or
>   (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). The Defendants assert that, since the State had previously amended its

4

Complaint while the case was pending in Chancery Court, it could not again amend its Complaint without obtaining written consent from the Defendants or being granted leave of Court. Therefore, because the State did not comply with either of those requirements, the Defendants assert that the Court should strike the Second Amended Complaint [48]. In response, the State asserts that the Defendants "are wrong for two reasons. First, the Federal Rules of Civil Procedure do not apply retroactively to pleadings filed before removal; and second, even if the rules did so apply, the State's right to 'amend its pleading once as a matter of course' did not expire when it amended with Google's consent in state court." Pl.'s Memorandum [63], p. 4.

Thus, the parties' dispute on this issue is a rather straightforward question—specifically, the effect of the State's pre-removal amendment of its Complaint and whether the same prohibits the State from now amending its Complaint as a matter of course pursuant to Rule 15(a). While recognizing the parties' respective arguments, the Court finds that it need not resolve the dispute on that ground.

"Rule 15(a) requires a trial court 'to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)) (citations omitted). Decisions concerning motions to amend are "entrusted to the sound discretion of the district court." *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). In exercising this discretion, "courts consider such equitable factors as (1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." *Torch Liquidating Trust ex rel. Bridge Associates LLC v. Stockstill*,

5

561 F.3d 377, 391 (5th Cir. 2009) (citation omitted).

Taking these equitable factors into account, the Court finds that the Second Amended Complaint [48] should not be stricken. Although the Defendants assert that the State has engaged in undue delay and bad faith, the simple and deciding factor, in the Court's view, is the minimal amount of prejudice which they have suffered as a result of this amendment. Discovery has not yet begun in the federal court action. Furthermore, the Defendants have still been able to file a request for dismissal pursuant to Rule 12(b)(6), and the amendment has caused no undue delay.

Therefore, rather than specifically addressing whether the State was entitled to amend as of right without leave, the Court, considering the liberal standard applicable in connection with Rule 15, finds that the Second Amended Complaint [48] should not be stricken. *See*, *e.g.*, *James v. New Century Mortgage Corp.*, 2006 WL 8455941, *4 (E.D. La. July 27, 2006) (holding that allowing an amendment because doing so advanced "Rule 15(a)'s policy of promoting litigation on the merits rather than on procedural technicalities."). Consequently, the Defendants' request that the Second Amended Complaint [48] be stricken is denied.

### II.    Motion to Dismiss

The Court next turns to the Defendants' request for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.    *Rule 12(b)(6) Standard*

"When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff." *Runnels v. Banks*, 2012 WL 2839802 at *1 (S.D. Miss. July 10, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). A legally sufficient complaint must establish more

6

than a "sheer possibility" that the plaintiff's claim is true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). It need not contain detailed factual allegations, but it must go beyond formulaic recitations of the elements of a cause of action, labels, or legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955); *see also International Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) ("To pass muster under Rule 12(b)(6), a complaint must have contained enough facts to state a claim to relief that is plausible on its face.") (citations omitted). "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Seahorn Investments, LLC v. Goodman Manufacturing Co., LP*, 667 F. App'x 452, 454 (5th Cir. 2016) (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).

### B. Children's Online Privacy Protection Act ("COPPA") Claim

"Congress enacted the COPPA to prohibit unfair or deceptive acts or practices in connection with the collection, use, or disclosure of personally identifiable information from and about children on the Internet." 64 Fed. Reg. 59888 (citing 15 U.S.C. § 6501-6505). Specifically, COPPA makes it "unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child" to do so in a manner that violates the regulations promulgated by the Federal Trade Commission. 18 U.S.C. § 6502(a). In other words, if an operator collects personal information from a child, it must

comply with the regulations promulgated by the FTC. *Id*.

The Defendants contend that, because their conduct complies with FTC guidance, the State's COPPA claim must be dismissed. Conversely, the State alleges that the Defendants' conduct is not compliant with the authority provided by the FTC and that its claim therefore should survive dismissal.[2]

The Regulations, promulgated as directed by Congress in COPPA, direct that operators collecting and maintaining personal information from a child must:

> (a) Provide notice on the Web site or online service of what information it collects from children, how it uses such information, and its disclosure practices for such information;
>
> (b) Obtain verifiable parental consent prior to any collection, use, and/or disclosure of personal information from children;
>
> (c) Provide a reasonable means for a parent to review the personal information collected from a child and to refuse to permit its further use or maintenance;
>
> (d) Not condition a child's participation in a game, the offering of a prize, or another activity on the child disclosing more personal information than is reasonable necessary to participate in such activity; *and*
>
> (e) Establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children.

16 C.F.R. § 312.3 (internal citations omitted) (emphasis added).

In large part, the parties' disagreement revolves around subsection (b)—the requirement that an operator obtain verifiable parental consent prior to collection and use of a child's personal information. Google and YouTube concede that they do not obtain actually contact the parent(s)

---

[2] Along with several other terms, the Code of Federal Regulations specifically define "child" and "operator." *See* 16 C.F.R. § 312.2. The parties do not dispute that Mississippi students under the age of 13 fall within the definition of "child" nor do they dispute that Google and YouTube fall within the definition of "operator." The Court therefore need not address the applicability of those terms.

8

of each Mississippi child utilizing the services; however, they assert that they need not do so in order to comply with FTC guidance, emphasizing language contained in the Federal Register that "the Rule does not preclude schools from acting as intermediaries between operators and parents in the notice and consent process, or from serving as the parents' agent in the process." 64 Fed. Reg. 59888, 59903. Google relies on further guidance that "where an operator is authorized by a school to collect personal information from children, after providing notice to the school of the operator's collection, use, and disclosure practices, the operator can presume that the school's authorization is based on the school's having obtained the parent's consent." *Id*. at 59903.

The State recognizes the above-referenced authority; however, it asserts that, because Google utilizes the information for commercial gain, additional rules are applicable. Specifically, the State emphasizes information from the "Complying with COPPA: Frequently Asked Questions" section of the FTC's website, which the Defendants attached to their Motion [54], that provides:

> Where a school has contracted with an operator to collect personal information from students for the use and benefit of the school, and *for no other commercial purpose*, the operator is not required to obtain consent directly from parents, and can presume that the school's authorization for the collection of students' personal information is based upon the school having obtained the parents' consent. . . If, however, an operator intends to use or disclose children's personal information for its own commercial purposes in addition to the provision of services to the school, it will need to obtain parental consent. Operators may not use the personal information collected from children based on a school's consent for another commercial purpose because *the scope of the school's authority to act on behalf of the parent is limited to the school context*.

[54], Exh. 6, p. 34 (emphasis added). Considering this guidance, the State contends that, because Google collected students' personal information for its own commercial gain, Google could not rely on the schools to act as intermediaries to obtain parental consent but, instead, must obtain

9

consent directly from the parents in some other fashion. In response, Google points back to the language of 16 C.F.R. § 312.3(b), which only requires that an operator "*obtain verifiable parental consent* prior to any collection, use, and/or disclosure of personal information from children." (emphasis added). Then, Google emphasizes that the COPPA Rule "does not preclude schools from acting as intermediaries between operators and parents in the notice and consent process." COPPA Rule, 64 Fed. Reg. 59,903. Google avers that "[t]his role is distinct from schools' ability to act as 'agents' in the purely educational context, where they can provide consent on parents' behalf. Rather than engage with this school-specific guidance, the State points to different guidance about enlisting a third party like an app store to obtain consent. But the FTC's school-specific guidance controls." Defs.' Memorandum [66], p. 5.

Google asserts that the above-referenced authority it recognizes—the language of the Code of Federal Regulations—is the most specific guidance on this issue. On the other hand, the State contends that the information contained on the FTC's website, wherein it provides further, updated guidance regarding the Regulations is the most specific authority and should control.

Setting aside the information contained on the FTC's website, the Court finds that Google's argument for dismissal at this stage falls short for another reason. As to verifiable parental consent, the Code of Federal Regulations provides that "[a]n operator must make *reasonable* efforts to obtain verifiable parental consent, taking into consideration available technology. Any method to obtain verifiable parental consent must be *reasonably calculated, in light of available technology, to ensure that the person providing consent is the child's parent*." 16 C.F.R. § 312.5(b)(1) (emphasis added).

Google contends that its conduct in connection with parental consent complies with this

10

standard. As to the utilization of "Additional Services" which exceed the scope of the purely educational context, Google states that its "Privacy Notice explains that Additional Services data is used for a variety of purposes described in Google's Privacy Policy, including to develop new Google services." Defs.' Memorandum [55], p. 13. Google contends that its practice of utilizing schools as an intermediary to obtain parental consent is sufficient. Specifically, it asserts as follows:

> In the GSFE Agreement, schools agree to "obtain parental consent for the collection and use of personal information" in the Additional Services "before allowing any End Users under the age of 18 to use those services." Schools provide Google with an express warranty that they have done so. Consistent with FTC guidance, Google presumes that schools authorizing access to Additional Services have complied with their contractual promise and warranty and obtained the requisite parental consent.

Defs.' Memorandum [55], p. 14.

Although not addressed in significant detail by the parties in their briefing, the Court feels compelled to note 16 C.F.R. § 312.5(b)(2), which sets forth numerous existing, satisfactory methods to obtain verifiable parental consent. Particularly, Section 312.5(b)(2) provides as follows:

> (2) Existing methods to obtain verifiable parental consent that satisfy the requirements of this paragraph include:
> (i) Providing a consent form to be signed by the parent and returned to the operator by postal mail, facsimile, or electronic scan;
> (ii) Requiring a parent, in connection with a monetary transaction, to use a credit card, debit card, or other online payment system that provides notification of each discrete transaction to the primary account holder;
> (iii) Having a parent call a toll-free telephone number staffed by trained personnel;
> (iv) Having a parent connect to trained personnel via video-conference;
> (v) Verifying a parent's identity by checking a form of government-issued identification against databases of such information, where the parent's identification is deleted by the operator from its records promptly after such verification is complete; or

> (vi) Provided that, an operator does not "disclose" (as defined by § 312.2) children's personal information, may use an email coupled with additional steps to provide assurances that the person providing the consent is the parent. Such additional steps include: Sending a confirmatory email to the parent following receipt of consent, or obtaining a postal address or telephone number from the parent and confirming the parent's consent by letter or telephone call. An operator that uses this method must provide notice that the parent can revoke any consent given in response to the earlier email.

16 C.F.R. § 312.5 (b).

It is undisputed that Google's course of action did not follow any of the existing methods to obtain verifiable parental consent set forth in 16 C.F.R. § 312.5(b). While recognizing that this fact is *not* dispositive, the Court does find that it weighs in the State's favor. In the Court's view, whether the efforts taken by Google—specifically, the utilization of schools as an intermediary and relying on the schools to provide notice if consent is refused, were *reasonable* is an issue that should not be decided at this stage in the proceedings.

As noted above, discovery in the federal action has not yet begun. Thus, the Court is unaware of what other measures to obtain consent were available to Google. This is particularly concerning when considered in light of the fact that the available technology must also be taken into account. The Court finds that it would be inappropriate, at this stage in the proceedings, to decide whether the conduct was *reasonable* in light of available technology. Discovery and, consequently, further development of the facts at issue will allow the Court to properly analyze this issue. *See*, *e.g.*, *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 632, 637 (N.D. Miss. Sept. 11, 2013) (quoting *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) ("Motions to dismiss pursuant to Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'") (additional citation omitted). To be clear, the Court's decision does not definitively determine that Google's conduct falls below the standards applicable to COPPA but, instead, simply finds that

12

further development of facts is necessary to analyze that issue appropriately and fully.

In light of its determination on this issue, the Court feels compelled to address the decision issued by the District Court for the District of New Mexico on September 25, 2020 in the case of *State of New Mexico, ex rel. Hector Balderas v. Google, LLC*, Cause No. 20-CV-0143, --- F. Supp. 3d ---, 2020 WL 5748353 (D. N.M. Sept. 25, 2020).[3] In that case, the State of New Mexico, much like the State of Mississippi in the present action, alleged that Google's practices in connection with G SUITE violate COPPA, as well as New Mexico state law. 2020 WL 5748353 at *1. In ruling on Google's Rule 12(b)(6) motion to dismiss, the district court accepted Google's argument that, for information collected and utilized in the educational context, reliance upon the schools to act as agents was sufficient to comply with COPPA. *Id*. at *4-5. However, regarding the collection of information for commercial purposes, the District Court of New Mexico held that Google's practice of utilizing schools as an intermediary—the same practice at issue here—constituted a "reasonable effort" sufficient to satisfy Google's duty under COPPA. *Id*. at *7.[4]

Of course, it cannot be disputed that the District Court of New Mexico's decision is not binding on this Court. *See*, *e.g.*, *Walton v. Tower Loan of Miss.*, 2005 WL 1367402, at *1 n. 2 (N.D. Miss. June 8, 2005) (recognizing that authority from other district courts constitutes persuasive authority). Furthermore, in reaching its decision today, this Court does not necessarily foreclose the ultimate determination that Google's conduct was sufficient to comply with its duty under COPPA. Rather, the Court's decision simply finds that further factual development is

---

[3] The Defendants notified this Court of the decision by the District Court of New Mexico by filing a Notice of Supplemental Authority [71]. The State filed a Response [72], arguing that the case is distinguishable from the case at bar. This Court notes that the District Court's Order is currently on appeal at the Tenth Circuit Court of Appeals.

[4] This Court notes that the District Court of New Mexico did, however, provide the State of New Mexico an opportunity to amend its complaint to address the issues raised in the court's ruling.

13

necessary in order to make the ultimate determination as to whether Google's utilization of schools as an intermediary for non-educational purposes and its reliance upon schools to advise when consent is not provided, constitutes a "reasonable effort" to obtain verifiable parental consent. *See*, *e.g.*, *Roop v. Melton*, 2013 WL 5349153, *4 (N.D. Miss. Sept. 24, 2013) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("In a Rule 12(b)(6) determination, the court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible.") (additional citation omitted).[5] The Defendants' request to dismiss the State's COPPA claim is denied.

### C. Mississippi Consumer Protection Act ("MCPA") Claim

The Defendants next request dismissal of the State's MCPA claim. The MCPA provides that "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." Miss. Code Ann. § 75-24-5(1). The allegations of the State's Second Amended Complaint [48] as it relates to the MCPA can essentially be divided into two separate parts. The Court will address them in turn.

The first set of allegations as it pertains to the MCPA largely mirror the State's allegations concerning the COPPA claim. Specifically, the State avers that "[a]s a result of its unfair methods of competition and unfair or deceptive acts, Google obtained, maintained, and maintains agreements with Mississippi's K-12 schools, which then allowed Google to garner an unfair introduction of its products to Mississippi consumers through individual G SUITE user accounts.

---

[5] Throughout this section of the Court's analysis, it specifically addressed the arguments in the context of Google, rather than both Defendants. The Court has done so because YouTube has taken the position that its reliance on Google to obtain the consent is appropriate. However, in light of the Court's conclusion that dismissal is not appropriate as to the claims against Google, the Court finds that YouTube is likewise not entitled to dismissal.

Upon the opening and using of each G SUITE account, Google's unfair and deceptive acts have allowed it to amass G SUITE user accounts and gain unauthorized access to K-12 student data." Second Amended Complaint [48], p. 40. In this section of the Second Amended Complaint [48], the State, in various forms, continually asserts that Google has improperly utilized student data for its own commercial gain. *See* Second Amended Complaint [48], p. 39-43. The State also asserts that Google improperly and falsely advertises its services as being COPPA compliant.

Google contends that the State is precluded from bringing these state law claims because they are preempted under COPPA. In pertinent part, COPPA provides:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d).

On this point, Google insists that "Congress's intent is clear: states may not impose additional (i.e., inconsistent) liability for perceived COPPA violations through state statutes." Defs.' Memorandum [55], p. 24. The Court does not interpret COPPA's preemption provision in this manner. Specifically, the statute directs that liability must not be imposed in connection with an activity or action that "is *inconsistent* with the treatment of those activities or actions under this section." 15 U.S.C. § 6502(d). In the Court's view, the State's Second Amended Complaint [48] does not request the imposition of liability for any action inconsistent with COPPA. Rather, the State's allegations constitute a request for *additional*, not inconsistent, liability. This distinction is critical. Preemption is inapplicable, and Google's request for dismissal on that point is denied.[6]

---

[6] The District Court of New Mexico has previously rejected a similar argument by Google in another case, specifically holding that "to allow Plaintiff's state law claims against Google to proceed would result in the imposition of liability only for conduct that violates COPPA, and thus would *not* run afoul of COPPA's

15

Having found that COPPA preemption is inapplicable, the Court turns to the State's second set of MCPA allegations, wherein it alleges that "[p]rior to April of 2014, Google affirmatively represented to Mississippi schools that student Gmail would not be used for any purpose other than to provide the service of Gmail to the student. Further, Google assured Mississippi schools that no student data would be processed by Google's advertising systems and there would be no ad-related processing in G SUITE." Second Amended Complaint [48], p. 15. However, prior to April of 2014, Google utilized technology to "extract information from the text within the student's email and process it." *Id*. The State further alleges that "[o]n March 13, 2014, Google publicly confirmed that the emails of all G SUITE for education end users were in fact scanned, processed, and data-mined for potential advertising . . . [But] [o]n April 30, 2014, Google announced that it would permanently remove all ad scanning in Gmail for G SUITE. Google further explained that it would no longer collect or use student data in G SUITE for education services for advertising purposes." *Id*. at p. 15-16. Although it does not allege that Google continues to extract information from Gmail as it did prior to April 2014, the State avers that "Google retains the data unlawfully collected prior to April 30, 2014, and continues its use of that data, to enhance or benefit Google services, improve its advertising services, compile individualized profiles of students, target students, and/or create new Google services." *Id*. at p. 16.

Google asserts that the pre-2014 conduct constitutes past conduct which escapes the reach of the MCPA. As to the retained data, Google argues that its retention and use of the data is not a "trade practice" addressed by the MCPA.

---

express preemption provision." *New Mexico ex rel. Balderas v. Tiny Lab Productions*, 457 F. Supp. 3d 1103, 1121 (D. N.M. 2020) (emphasis added).

16

The Mississippi Supreme Court has recently noted that "the purpose of the [MCPA] is not to punish past violations. Rather, the purpose of the MCPA is to restrain or enjoin unfair methods of competition through *injunctive* relief." *State of Mississippi, ex rel. Fitch v. Yazaki North America, Inc.*, 294 So.3d 1178, 1184 (Miss. 2020) (citing Miss. Code Ann. § 75-24-9) (emphasis in original). However, the Supreme Court recognized that "there could be cases in which the nature of the past conduct would support seeking to enjoin future conduct. . . This is especially true when the defendant voluntarily ceased—or claimed to have voluntarily ceased—the alleged illegal activity *after* the injunctive action was filed." *Id*. (citing *Pullum v. Greene*, 396 F.2d 251 (5th Cir. 1968)) (additional citation omitted) (emphasis in original).

Recognizing this authority, the Court finds that Google's pre-April 2014 extraction of data is not cognizable under the MCPA. Taking the State's allegations as true, Google *voluntarily* ceased this activity several years ago, prior to the initiation of litigation against it. Therefore, while this Court recognizes that Google's discontinuation of the wrongful conduct does not deprive it of its authority to grant injunctive relief, the allegations of the State's Second Amended Complaint [48] are such that the Court finds judicial involvement is unnecessary and would not further the intent of the MCPA. *See*, *e.g.*, *Yazaki North America, Inc.*, 294 So.3d at 1186 ("Discontinuing the alleged illegal activity does not deprive a court of its power to grant an injunction. . . But to obtain an injunction, the moving party must satisfy the court that relief is needed.") (citations omitted). Thus, to the extent that Google requests dismissal of the State's MCPA claim as it relates to pre-2014 extraction of data from Gmail accounts, the request is granted.

That brings the Court to the second portion of this allegation—that Google unlawfully retains this data and uses it for commercial gain. Again, Google asserts that "retention and use of

17

data obtained six or more years ago—is not a trade practice at all, and thus cannot be an ongoing 'unfair or deceptive' trade practice subject to injunction under the MCPA." Defs.' Memorandum [55], p. 18. The MCPA defines "trade" and "commerce" as "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated[.]" Miss. Code Ann. § 75-24-3(b). The State rejects Google's distinction, emphasizing that "[w]hen Google said it would never use student Gmail data for prohibited purposes, its continued use of ill-gotten data continues to be unlawful and deceptive." Pl.'s Memorandum [63], p. 22.

The Court agrees with the State's argument on this point. In the Court's view, Google's argument constitutes an extremely narrow interpretation of the applicable statute which would achieve an unintended result. Taking the State's allegations as true, which the Court must do at this stage of the proceedings, Google, in conducting its advertising services, continues to utilize data it *admittedly* wrongfully obtained. The Court finds that permitting Google to escape potential liability because it voluntarily ceased the conduct which permitted it to obtain the information which it is now utilizing would simply be inequitable. As such, the Court finds that, since Google allegedly continues to utilize the data, it constitutes an ongoing, potentially unfair or deceptive practice that injunctive relief could possibly rectify, subjecting it to the MCPA. *See*, *e.g.*, *Yazaki*, 294 So.3d at 1184. Google's request is therefore rejected.[7]

---

[7] Google also asserts that the State's allegations as to Google's retention and utilization of the data are conclusory and fall below the applicable pleading standard. Having reviewed the Second Amended Complaint [48] in detail, the Court rejects this argument. Throughout the Second Amended Complaint, the State makes specific allegations that Google improperly retains and uses this data. *See*, *e.g.*, *Tate v. Lafayette Cty., Miss.*, 2012 WL 6454579 (N.D. Miss. Dec. 13, 2012) (noting that the Rule 12(b)(6) standard "requires the pleading of factual content that at least allows a reasonable inference that the defendant is liable for the alleged misconduct. Although such a requirement does not necessitate detailed factual allegations, formulaic recitations of the elements of a cause of action simply will not do.")

*Conclusion*

For the reasons set forth above, the Defendants' First Motion to Dismiss [44] is **DENIED AS MOOT.** Their Motion to Strike or, in the Alternative, to Dismiss [54] is **GRANTED IN PART and DENIED IN PART**. The stay of this case is hereby **LIFTED**. The Magistrate Judge assigned to this case is hereby directed to reset all applicable pre-trial deadlines. A trial date will be set in due course.

SO ORDERED, this the 16th day of March, 2021.

/**s**/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

(citations omitted).